## Behr, to use, v. Russell, Secretary of the Department of Public Assistance

*George L. Reed*, for petitioner.

*M. Louise Rutherford*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for defendant.

*John P. Berry*, assistant city solicitor, for City of Philadelphia.

HARGEST, P. J., February 23, 1940.—This case comes before us upon a motion to quash an alternative writ of mandamus.

The question is whether a blind person, an inmate of the Philadelphia Home for the Indigent, is entitled to receive a pension under the Public Assistance Law of June 24, 1937, P. L. 2051, and its amendments.

Michael Behr, a blind person, qualified in all other respects to receive a pension under the act, is an inmate of the Philadelphia Home for the Indigent, which is an

institution owned and operated by the City of Philadelphia, and is not a prison, jail, insane asylum, reform or correctional institution. The petition avers "that in the month of February 1935, the said Michael Behr filed application for a blind pension and since April 8, 1936, when the payment for February 1936 was made," has been receiving a pension of $30 a month, in accordance with prior statutes, the language of which, insofar as it applies to this case, is identical with the Act of 1937. The payments to him were discontinued since June 1939, pursuant to an opinion given the Department of Public Assistance of the Commonwealth by the Attorney General's Department. The matter depends upon the construction to be given to section 9, and particularly paragraph (c) 5.

The Public Assistance Law, supra, provides, among other things, in section 9 for assistance to the blind. The pertinent parts of section 9 are as follows:

"Eligibility for Assistance.—Except as hereinafter specifically otherwise provided in the case of pensions for the blind, all persons of the following classes shall be eligible to receive assistance, in accordance with rules, regulations and standards established by the Department of Public Assistance, with the approval of the State Board of Assistance, as to eligibility for assistance, and as to its nature and extent . . .

"(c) Blind Persons. A blind person is defined as one who . . . (5) is not, at the date of making application, an inmate of any prison, jail, insane asylum, or any other public reform or correctional institution."

The controversy centers around the construction to be given to the word "public." Relator contends that that word refers to and modifies "reform or correctional institution." Defendant contends that it is an independent word and means any public institution, whether reform, correctional or not. There is a well-defined and well-established rule of statutory construction known as ejusdem generis. This means that where general words follow the

enumeration of particular classes of persons or things, the general words will be construed as applicable only to the persons or things of the same general rule or class as those enumerated: 59 C. J. 982 §581 and cases cited. It is therein said:

"The particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus. The rule is based on the obvious reason that if the legislature had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes. The words 'other' or 'any other' following an enumeration of particular classes are therefore to be read as 'other such like,' and to include only others of like kind or character. The doctrine of ejusdem generis, however, is only a rule of construction, to be applied as an aid in ascertaining the legislative intent, and cannot control where the plain purpose and intent of the legislature would thereby be hindered or defeated".

In Frederick's Estate, 333 Pa. 327, 331, it is held:

"General expressions used in a statute are restricted to things and persons similar to those specifically enumerated in the language preceding the general expressions".

This case is very much in point. The Act of June 17, 1913, P. L. 507, there involved provides, in section 1, among other things: "All mortgages; all moneys owing by solvent debtors, whether by promissory note, or penal or single bill, bond or judgment" are made taxable; and section 17 provides: "That all scrip, bonds, or certificates of indebtedness" issued or assumed are taxable. The question was whether a judgment recovered, growing out of condemnation of land for public purposes, was taxable. It certainly was within the comprehensive language above quoted, but the Supreme Court said (page 331):

"In the instant case, the word 'judgment' in the first section and the words 'evidences of indebtedness' used in the 17th section, are not to be given the meaning these words would ordinarily import if used in a statute alone.

They are preceded by language specifically enumerating the various items of personal property made taxable, and must be read in connection with those specific expressions. When this is done, it is clear that the words 'evidences of indebtedness,' refer only to obligations voluntarily incurred, such as on a bond or certificate of indebtedness, and that the word 'judgment' refers to judgments entered on such an obligation, such as on a bond or a promissory note."

Applying this to the words of the statute, it follows that the word "public" does not include any public institution in the broad sense of the word, but only "a public reform or correctional institution," as the language itself conveys. If the legislature did not mean to limit the word "public" to the kind of institutions just before enumerated, there would be no point in using the word "other" and, as stated in the citation from Corpus Juris above, the use of that word means "other such like."

An argument is presented on both sides because of the absence of a comma after the word "public." Relator contends that defendant asks that the statute be construed as if the comma were there. But there is no comma there. There is another principle of statutory construction declared by section 53 of our Statutory Construction Act of May 28, 1937, P. L. 1019, that "In no case shall the punctuation of a law control or affect the intention of the Legislature in the enactment thereof."

In Orlosky v. Haskell, 304 Pa. 57, 62, Mr. Justice Maxey said:

" 'The legislature must be intended to mean what it has plainly expressed. . . . It matters not, in such a case, what the consequences may be. . . . Where, by the use of clear and unequivocal language, capable of only one meaning, anything is enacted by the legislature, it must be enforced, even though it be absurd or mischievous. If the words go beyond what was probably the intention, effect must nevertheless be given to them. . . . Its [the court's]

duty is not to make the law reasonable, but to expound it as it stands, according to the real sense of the words' ".

Defendant claims that to interpret this statute as relator contends would be to do violence to the legislative intention. It is said that the word "public" must modify reform or correctional, otherwise there would be no meaning to the word "public," because reform or correctional institutions are all public institutions. That statement is not correct. This court has official knowledge that there are at least two correctional institutions in this State, namely, the Protectory for Boys at Protectory Place, near Phoenixville, Pa., and the House of Good Shepherd for Girls at Reading, Pa., both of which are exclusively maintained by the Catholic Church. The writer has personal but not official information that there are in Philadelphia, Norristown, Erie, Pittsburgh, and Scranton at least five other correctional and reform institutions maintained by the Catholic Church which are not public. The legislature may well have intended that a blind person who has so demeaned himself as to become an inmate of a prison, jail, reform or correctional institution, or who is so mentally diseased as to be in an insane asylum, should not receive the benefits of this act, but that in the distribution of the largess of the Commonwealth to the blind all others of that class should be assisted. We cannot say that such a legislative intention would be unreasonable and absurd.

It is argued that the philosophy of this blind pension statute is that the blind should be given the pension to enable them to live in the normal atmosphere of a private home, rather than in the artificial atmosphere of a public institution. This also might be a proper legislative intention. But where there are two intentions to be drawn from the language, neither of which is absurd or unreasonable, are we to assume that the legislature did not know the proper rules of construction applicable to the statute which they passed? Are we, therefore, to violate those well-founded rules of construction in order to give

the language what might appear to us to be the better economical position? We answer this question in the language of Mr. Justice Maxey above quoted, that we must apply the rules of construction to the language as used, "when there is no inconsistency, absurdity or ambiguity in a statute as officially printed and punctuated," and therefore we "will not give it a different meaning by changing the punctuation."

There is another consideration. The Blind Pension Act of January 17, 1934, P. L. 246, and the Blind Pension Act of July 9, 1935, P. L. 621, both contained exactly the same language. Under these two acts, relator, while an inmate of the Philadelphia Home for the Indigent, was granted the pension until the month of June 1939. We, therefore, have a contemporaneous executive construction of what the legislature meant by the language used. Section 51 of the Statutory Construction Act, supra, provides:

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters . . . legislative and administrative interpretations of such law."

While the administrative interpretation in this case only covered a period from April 1936 to June 1939, and may not be considered a very extensive period, nevertheless, it is entitled to whatever weight in the interpretation of the statute the period justifies: McCaughn, etc., v. Hershey Chocolate Co., 283 U. S. 488; Grime et al. v. Department of Public Instruction, etc., et al., 324 Pa. 371; Grant, Hutcheson Co. et al. v. Pennsylvania Securities Comm., 301 Pa. 147.

It is also contended that the legislature could not have meant to give a pension to inmates of institutions maintained by its subordinate sovereignties, such as the City of Philadelphia. That may or may not be a good policy, but whether it is or not is a legislative question, and if a proper construction of the language leads to that result the remedy is with the legislature and not with the courts.

It is also contended by defendant that this mandamus should not be granted because mandamus lies only where there is a clear legal right in relator and a corresponding duty of respondent: Homan v. Mackey et al., 295 Pa. 82. The answer to this contention is that if we are right in our interpretation of the statute, there is a clear legal right.

For these reasons we are of opinion that the motion to quash the writ of mandamus must be denied.

And now, February 23, 1940, the motion of Howard L. Russell, Secretary of the Department of Public Assistance of the Commonwealth of Pennsylvania, to quash the writ of alternative mandamus is hereby dismissed, and defendant is given 15 days within which to file an answer to the merits.