**Commonwealth v. The Camax Company**

*John Y. Scott,* for appellant.

*Eugene J. Anastasio,* for Commonwealth.

HERMAN, J., October 30, 1964.—The Camax Company appeals from the decision of the Board of Finance

and Revenue, which refused to review the action taken by the Department of Revenue against it, holding that the company owed corporation income tax to the Commonwealth of Pennsylvania for the year ending August 31, 1953.

The Camax Company is a domestic corporation which is engaged in importing vanilla beans from Madagascar and Mexico and selling them in the United States. It also handles vanilla beans on consignment for other importers, and also sells these beans in this country.

Appellant claims that the tax which the Commonwealth seeks to impose on it is unconstitutional, in that it violates the Interstate Commerce Clause and the import-export clause of the Constitution of the United States; that the Corporation Income Tax Law does not apply to domestic corporations, and that if it were construed to so apply to domestic corporations so engaged, such construction would amount to an invalid classification under article IX, sec. 1, of the Pennsylvania Constitution.

It was duly agreed in writing by the parties, pursuant to the Act of Assembly of April 22, 1874, P. L 109, 12 PS §688, to try the case without a jury, and all of the facts were stipulated by the parties.

We adopt this stipulation of facts as our own and will refer to such of the facts contained therein as appear to us to be necessary for a better understanding of this opinion.

From this stipulation of facts we find that during the tax year in question appellants purchased vanilla beans from the plantation owners where the beans are grown and took title thereto in Mexico or Madagascar. The beans, after having been dried and cured at the plantation, are tied in bunches and packed in pure tin containers varying in size from 12 to 75 pounds each. The containers, after being transported to shipping

points, are then gathered together in boxes and transported to appellant's warehouse in Philadelphia, Pa. At the warehouse, the beans are inspected for net weight by the Federal Department of Agriculture, which inspection requires the opening of the tin containers in which they are packed; they are then also inspected for quality and condition of spoilage. The beans are repacked in the same containers from which they were taken and are stored in the warehouse until sold to customers. At no time are the beans mixed or commingled, with the result that the identical beans are replaced in their original containers. All sales of such beans are made in Pennsylvania at appellant's office in Philadelphia, and are sold in the tin containers in which they were originally received.

The consigned beans are shipped to appellant in the same manner, and during the tax year in question appellant earned commissions on the consigned beans in the amount of $5,015. Of these beans, the company was neither the owner nor the importer, but merely sold the beans in this country for the importers.

Including the $5,015 commission, the company, for the year in question, had a taxable net income of $23,-838.42, and the taxing authorities of the Commonwealth of Pennsylvania assessed the corporation income tax against the company for that year at $1,-191.92, which amount has been paid. Appellant did not pay any corporate net income tax for the year in question, because in the year 1943, in this court, to no. 30, Commonwealth Docket, it had been stipulated by the Commonwealth and the company's predecessor that, since the company was engaged exclusively in foreign commerce, it was not subject to the corporate net income tax.

There is no doubt that the Camax Company is an importer, as far as all of the vanilla beans are concerned, except for those handled by it on consignment; neither

is there any doubt that the vanilla beans are imports; nor that they remain such as long as they are kept in their original containers, or until they are sold by appellant. Consequently, a State tax imposed on the imports, as such, or on the privilege of importation by a corporation, would certainly violate article I, sec. 10, cl. 2, of the United States Constitution, which provides:

"No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws. . . ."

In Hooven & Allison Co. v. Evatt, 324 U. S. 652, 657 (1944), it was said that:

"[T]hings imported are imports entitled to the immunity conferred by the Constitution; that that immunity survives their arrival in this country and continues until they are sold, removed from the original package, or put to the use for which they are imported". (Citing cases.)

But where the tax is imposed on the *net income* of the importer in the same manner in which it is imposed on the net income of other domestic corporations, the import-export clause of the United States Constitution is not infringed.

Appellant rightly points out that the limitations on the States under the Interstate Commerce Clause, article I, sec. 8, cl. 3, of the United States Constitution, is a conditional limitation, while that under the import-export clause is absolute, and that for that reason, many of the cases decided under the former clause are not authority for situations arising under the latter, even though the language in some of the United States Supreme Court cases may indicate that there is little difference between the two clauses as far as taxes burdening commerce is concerned. See Richfield Oil Corp. v. State Board of Equalization, 329 U. S. 69 (1946). But the interstate commerce cases in the

United States Supreme Court make it abundantly clear that a tax on the *net income* of a corporation engaged in interstate commerce, if fairly apportioned, is not objectionable as far as the United States Constitution is concerned. Peck v. Lowe, 247 U. S. 165, 175 (1918), is direct authority for the proposition that a Federal income tax on income derived from exportation does not violate the import-export clause, if it is not discriminatory against exportation. The court there, in pointing out that the tax was laid on income from all sources and not just income from exportation, found that there was no discrimination, and said:

"The tax is levied after exportation is completed, after all expenses are paid and losses adjusted, and after the recipient of the income is free to use it as he chooses. Thus what is taxed—the net income—is as far removed from exportation as are articles intended for export before the exportation begins".

There can be no doubt that if an income tax, fairly assessed, upon income derived from *exportation* does not violate the Constitution, then neither would a similar tax imposed on net income derived from *importation*. In fact, Thomas Reed Powell wrote in the Harvard Law Review, vol. 32, p. 902, 907 (1919), shortly after the Peck v. Lowe case was decided in the United States Supreme Court:

"Now that the *federal* tax on *net income* is held not to be a tax on *exports* although the income taxed is from an exporting business, a *state* tax on *net income* must be permitted to reach income from the sale of *imports* and escape conviction on the charge of being a tax on imports. . . ." (Italics supplied.)

While the cases of Memphis Natural Gas Co. v. Beeler, 315 U. S. 649 (1942); Northwestern States Portland Cement Co. v. Minnesota, 358 U. S. 450 (1959); Matson Navigation Co. v. State Board of Equalization of California, 297 U. S. 441 (1936);

United States Glue Company v. Town of Oak Creek, 247 U. S. 321 (1918), which was decided in the same term of court as Crew Levick Company v. Commonwealth of Pennsylvania, 245 U. S. 292 (1917), and Peck v. Lowe, supra, dealt with the effect of State taxes on interstate commerce, as distinct from foreign commerce, we think that the rationale of these cases clearly points to the result we reach here, that a State tax on net income, as distinguished from a like tax on gross receipts, does not amount to a tax on foreign commerce even though the income taxed arises from foreign commerce; provided that the tax is not otherwise objectionable by being discriminatory against such foreign commerce. In Crew Levick Company, supra, where the State tax was found to be objectionable by violating the import-export clause of the United States Constitution, because a tax on gross receipts was held to be directly imposed on the foreign commerce, the court, arriving at this conclusion, cited a number of cases most of which related to interstate commerce, but opined: "There is no difference between this and foreign commerce, so far as the present question is concerned", and then in Peck v. Lowe, supra, where the tax in question was the Federal income tax on domestic corporations, and the court found that such a tax when imposed on *income* derived from foreign commerce did not violate the import-export clause as being an impost on exports, the court said:

"[The tax] is not laid on articles in course of exportation or on anything which inherently or by the usages of commerce is embraced in exportation or any of its processes. On the contrary, it is an income tax laid generally on net incomes. And while it cannot be applied to any income which Congress has no power to tax . . ., it is both nominally and actually a general tax. It is not laid on income from exportation because of its source, or in a discriminative way, but just as it

is laid on other income. . . . There is no discrimination. At most, exportation is affected only indirectly and remotely. The tax is levied after exportation is completed, after all expenses are paid and losses adjusted, and after the recipient of the income is free to use it as he chooses. Thus what is taxed—the net income—is as far removed from exportation as are articles intended for export before the exportation begins": pages 174-75.

The court then says that:

"[T]he conclusion is unavoidable that the net income from the venture when completed, that is to say, after the exportation and sale are fully consummated, is likewise subject to taxation under general laws": page 175.

In Matson Navigation Co. v. State Board of Equalization of California, supra, at 444, the court, in pointing out that previous decisions of the United States Supreme Court show that a State tax on *gross earnings* derived from interstate commerce are a burden on that commerce and repugnant to the commerce clause, nevertheless further points out that these cases also show that "*a State may tax net income derived from a a domestic corporation's business—intrastate, interstate and foreign*", and that "net income justly attributable to all classes of business done within the State may be used as the measure of a tax imposed to pay the State for the use therein of the corporate franchises granted by it." (Italics supplied.)

Concluding as we do that a tax on net income as applied here does not violate the import-export clause, we pass on to the question of the propriety of the levying on this domestic corporation of a *corporation income tax* rather than a corporate net income tax. Appellant contends that the corporation income tax was meant only to apply to foreign corporations engaged solely in interstate commerce in Pennsylvania, and

points to Commonwealth v. Eastern Motor Express, Inc., 398 Pa. 279, 288 (1959), where Mr. Justice Bell, now Mr. Chief Justice, said that:

"[This] Law [The Corporation Income Tax Law] was was clearly intended and must be construed to cover, include and tax only *foreign* corporations which were engaged *solely* in *interstate* (italicized in original) commerce in Pennsylvania and which employed property or carried on local activities in this Commonwealth in connection with interstate commerce". (Italics supplied).

The Eastern Motor Express case dealt with an *Indiana* corporation, which had its principal place of business in Terre Haute, and which was engaged in transporting property by motor vehicle as a common carrier *exclusively* in *interstate* commerce. The company had no certificate of authority to do business in Pennsylvania, and it did not employ or use capital or property in Pennsylvania in connection with any intrastate business; nor was it engaged in any intrastate commerce in the Commonwealth, and it had no authority whatsoever to operate as a common carrier in intrastate commerce. The company did, however, in connection with its interstate commerce in Pennsylvania, have a number of tractors, trailers, trucks and cars all located regularly and continuously in Pennsylvania. It leased four substantial terminals in Pennsylvania, and employed in this State terminal managers, office managers, salesmen, clerks, dockmen, pickup and delivery drivers, safety control men and a mechanic, all in connection with its interstate commerce business. Relying principally on Northwestern States Portland Cement Co. v. Minnesota, supra, the Pennsylvania Supreme Court found that the imposition of the corporation income tax on this taxpayer was not unconstitutional as a violation of the interstate commerce clause, and it was while pointing out the differences between

the Corporate Net Income Tax Law and the Corporation Income Tax Law that the above-quoted statement was made.

The Corporate Net Income Tax Law of May 16, 1935, P. L. 208, reenacted and amended on December 27, 1951, P. L. 1746, 72 PS §3420a, imposed what it called an excise tax on the net income of domestic and foreign corporations doing business in the Commonwealth or having capital or property employed or used in this Commonwealth at the rate of five percent, providing that, in case the entire business of the corporation was not transacted within the Commonwealth, then the tax imposed by that act would be based upon a portion only of the net income of the corporation as determined by certain allocations and apportionments. Then, in 1951, as Mr. Chief Justice Bell pointed out in Eastern Motor Express:

"The Commonwealth, seeking desperately needed revenue, has drawn the Corporation Income Tax Law of 1951 so broadly and in some respects so confusedly that, as we shall see, it is exceptionally difficult to decipher the meaning of some of its important provisions": page 287.

The Corporation Income Tax Act of August 24, 1951, P. L. 1417, as further therein pointed out, "was a catch-all Act intended to catch all possible taxable corporate income *which was not already taxed under the Corporate Net Income Tax Act*". (Italics supplied.) But, should not the income of the domestic corporation here be taxed under the Corporate Net Income Tax Act?

Both the Corporate Net Income Tax Act and the Corporation Income Tax Act define "corporation" to include companies organized either under the laws of Pennsylvania, or the laws of any other State or foreign country, or under the laws of the United States. The Corporate Net Income Tax Act adds to this definition: "and doing business in this Commonwealth, or

having capital . . . employed or used in this Commonwealth", while the Corporation Income Tax Act adds: "and carrying on activities in this Commonwealth, or owning property in this Commonwealth. . . ." Both provisions are basically the same.

The definition of "income" in both acts, although containing some different language relative to salaries and gross receipts fractions, is, as Mr. Chief Justice Bell points out, "virtually identical".

It is in the "Imposition of Tax" sections of the two laws that the major differences appear. The Corporate Net Income Tax Act imposes on every corporation "for the privilege of doing business in this Commonwealth, or having capital or property employed or used in this Commonwealth, . . . a State *excise* tax of five per centum per annum upon each dollar of net income". The Corporation Income Tax Act imposes a *"property* tax on net income derived from sources within this Commonwealth at the rate of five per centum per annum"* on "every corporation carrying on activities in this Commonwealth or owning property in this Commonwealth" and then, significantly, adds, *Provided, however, That such net income shall not include income for any period for which the corporation is subject to taxation under the Corporate Net Income Tax Act. . . ."* (Italics supplied.)

The problem is thus narrowed to whether or not appellant's net income is properly subject to taxation under the Corporate Net Income Tax Act—for if it is, then the Commonwealth must fail here.

We have earlier disposed of the constitutional question, finding that the Commonwealth may, by a tax on net income, if properly apportioned, reach the income resulting from foreign or interstate commerce.

Here, too, we must not lose sight of the fact that appellant is a domestic corporation, owing its very existence to this Commonwealth, and because its princi-

pal, if not sole, place of business and all of its tangible property is located in this State, pays no corporation tax to any other jurisdiction. See Matson Navigation Co. v. State Board, supra; United States Glue Company v. Town of Oak Creek, supra, and Commonwealth v. Northern Metal Co., 82 Dauph. 116 (1964). Clearly, appellant should pay an income tax here. But, as we view it, there seems no valid reason why Camax is not subject to the basic Pennsylvania income tax act, namely, the Corporate Net Income Tax Act, rather than to the "catch-all" act which the Commonwealth is attempting to impose.

The fact that the predecessor to this company and this company itself, through what we believe to be a misinterpretation of the Corporate Net Income Tax Law by the Commonwealth taxing authorities, has been so fortunate as to pay no corporate net income tax since 1943, should not relieve it from such tax in the future.

Believing as we do that now, in any event, in light of the latest decisions of our United States Supreme Court, a State may levy income tax on income such as received here, and that this being a domestic corporation not engaged exclusively, or even partially, in interstate commerce, the Corporate Net Income Tax Act, and not the Corporation Income Tax Act is applicable, we are, therefore, constrained to hold in favor of appellant.

### Conclusions of Law

1. A net income tax levied by the Commonwealth of Pennsylvania on the income of the Camax Company does not violate article I, sec. 10, cl. 2; nor article I, sec. 8, cl. 3, of the Constitution of the United States.

2. The net income of the Camax Company is subject to taxation under the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, 72 PS §3420a, et seq., and, therefore, such income is not subject to taxation under

the Corporation Income Tax Act of August 24, 1951, P. L. 1417, 72 PS §3420n-1, et seq.

ORDER

And now, October 30, 1964, it is hereby ordered, adjudged and decreed that the appeal of the Camax Company be sustained, and that judgment be entered against the Commonwealth of Pennsylvania and in favor of the Camax Company, unless exceptions be filed within 20 days hereof.

The prothonotary is directed to notify the parties or their counsel of this order forthwith.