## Commonwealth *v.* Northern Metal Company, Appellant.

Argued May 26, 1964. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Morris Wolf*, with him *Steven A. Arbittier, Raymond J. Bradley*, and *Wolf, Block, Schorr & Solis-Cohen*, for appellant.

*Vincent X. Yakowicz*, Deputy Attorney General, with him *Walter E. Alessandroni*, Attorney General, for Commonwealth of Pennsylvania, Department of Finance and Revenue, appellee.

OPINION BY MR. JUSTICE COHEN, November 10, 1964:

Northern Metal Company (appellant) is a Pennsylvania corporation with its sole place of business in Philadelphia. Originally incorporated in 1932 as a dealer in metals, it amended its charter in 1954 to permit it to engage in the business of stevedoring. All of its real and personal property is located in Pennsylvania. All of its employees are located and work in Pennsylvania. It is not registered to do business in any other jurisdiction, nor does it pay any tax to any other state or country.[1]

---

[1] These factors are not recited to justify Pennsylvania's right to tax; they only indicate the locale of appellant's activities.

During the year 1957[2] appellant filed its Pennsylvania corporate net income tax report showing net income in the amount of $52,901.02. From this it subtracted interest on United States securities of $2,094.91 and paid tax (at 6%) on the remainder. The tax, thus computed, was $3,048.37. The State settled the tax by determining net income to be $676,140.18 (the amount of taxable income reported to the Federal Government) which, after substracting the interest on United States securities, left an income of $674,045.27 subject to tax. Tax was then computed at $40,442.72. The State's computation was made without resort to the allocation fractions set forth in the Corporate Net Income Tax Act, Act of May 16, 1935, P. L. 208, as amended, 72 P.S. §§3420a-3420n. It simply applied the six percent tax rate to 100% of appellant's net income as determined by the State.

Appellant then filed a petition for resettlement in accordance with §1102 of The Fiscal Code, Act of April 9, 1929, P. L. 343, as amended, 72 P.S. §1102; and the State resettled appellant's tax at $31,982.18. This amount was computed by allowing appellant to use the allocation fractions and determining that a partial allocation of gross receipts could be made outside of Pennsylvania.[3]

---

[2] Appellant has presented a similar appeal for 1958. However, since the issue is identical for each year, we shall discuss only the facts for 1957.

[3] While one of appellant's witnesses testified that, in his opinion, the State had computed the fractions by excluding from the numerator of the gross receipts fraction the receipts from stevedoring activities, the record does not contain an explanation of how the fraction was computed or a reconciliation of this fraction with the receipts shown on the tax return. We cannot, under these circumstances, say with certainty that the State did allow an exclusion for stevedoring in making this resettlement.

Subsequently, the Commonwealth, in accordance with the authority granted it under §1105 of The Fiscal Code, supra, 72 P.S. §1105, resettled appellant's 1957 corporate net income tax by disallowing the use of any allocation fractions and imposing tax at the rate of six percent on appellant's total net income. The total income was the $676,140.18 previously determined by the State plus $15,665.17 added to federal taxable income by the Federal Government or $691,805.35. From this total was substracted the interest from United States securities,[4] leaving a taxable net income of $689,711.34 and a tax of $41,382.68.

Appellant filed a petition for review with the Board of Finance and Revenue which upheld the final resettlement. On appeal to the court below from the board's refusal, appellant was again denied relief. This appeal followed.

In preparing its corporate net income tax report for 1957, appellant resorted to a procedure it had previously followed in earlier years.[5] It determined the amount of its federal taxable income—here, $676,140.-

---

[4] In substracting this interest figure, the State used $2,094.01 rather than the actual amount of $2,094.91. Hence, the total taxable income is 90 cents more than it should be. Since no question is raised in this respect, we shall disregard this minor error.

[5] Although appellant apparently suggested below that approval by the State of this procedure required continued adherence by the State in 1957, it has not raised this issue here. We have held that the State cannot be estopped by the acts of its agents in erroneously settling a particular taxpayer's tax. Commonwealth v. Western Maryland R. R. Co., 377 Pa. 312, 105 A. 2d 336 (1954). This is not a situation where we are asked to review a change in a long-standing administrative interpretation of a reenacted statute. See Loeb Estate, 400 Pa. 368, 162 A. 2d 207 (1960) ; Pennsylvania Co. v. Zussman, 25 Pa. D. & C. 412 (1936) ; Behr, to use v. Russell, 38 Pa. D. & C. 177 (1940) ; Statutory Construction Act, Act of May 28, 1937, P. L. 1019, §51, 46 P.S. §551.

18[6]—and subtracted an amount which it computed as income from its stevedoring activity. This latter figure was determined by breaking down total sales into two categories—stevedoring and other activities[7]—and subtracting from each the cost of goods sold computed for each category. To these gross profit from sales figures other items of income (e.g., bond interest, rents, capital gains) were added, where appropriate, to each category; and the items of expense were then deducted from each. In determining how to allocate expenses between stevedoring income and other income, two methods were used: (1) expenses specifically identifiable with one or the other type of income were allocated to that type and (2) items not so identifiable were allocated in accordance with the direct labor ratios or cost of goods ratios previously determined. It is clear from the record that in making this breakdown of income and expense, appellant necessarily had to make arbitrary decisions, albeit reasonable in the minds of appellant's officers and accountants, because no contention is made by appellant that it was engaged in separate businesses for which it maintained separate books and records. Its activities were purely unitary, and its categorization was made solely for Pennsylvania tax purposes.

[6] For simplicity's sake we shall hereafter refer to the figures shown on the original return which does not reflect the $15,665.17 addition resulting from the federal change. The allocation made by appellant on its original return was not redone to reflect this added sum; and in view of our decision and of appellant's present position that allocation should be accomplished through use of the fractions and not by the direct exclusion of income, there is no need for us to do so.

[7] In addition to sales income from stevedoring, appellant received sales income during 1957 from sales of steel, sales of salvaged machinery, storage charges not connected with export activity, and some miscellaneous items.

While the State complains that there is no justification for the arbitrary allocation and points specifically to various items of income and expense allocated to stevedoring without, it contends, reasonable basis therefor, we need not pursue this aspect of the case further for appellant, before us, apparently has abandoned any argument that its procedure was proper. Instead, it argues that it should be entitled to allocate its income by use of the apportionment fractions provided for in the Corporate Net Income Tax Act and, in so doing, to exclude from the numerator of each fraction the tangible property values, wage expenditures and gross receipts attributable to its stevedoring activity. Further, appellant states, if the statute is interpreted in such a way as to deny it the right to make such allocations, the statute, as so applied, is unconstitutional for it would contravene both the commerce clause[8] and the export-import clause[9] of the Federal Constitution. This is so, says appellant because stevedoring is an inseparable part of foreign commerce and of the exporting process.

The Corporate Net Income Tax Act, supra, as reenacted and in effect during 1957, Act of April 30, 1957, P. L. 80, imposed a tax for the privilege of doing business in Pennsylvania on every corporation exercising such privilege. The tax rate was six percent, and the measure of the tax was the corporation's net income. Net income was defined in the Act as the taxable income returned to and ascertained by the Federal Government. The Act, §2, stated that if the entire business of the corporation is transacted within the State, the net income is 100% of the federal taxable income. However, to provide for situations where a corporation transacts business outside the State, the Act, §2, further stated that in such situation a cor-

---

[8] Article 1, §8, cl. 3.
[9] Article 1, §10, cl. 2.

poration could apportion its Pennsylvania net income (i.e., federal "taxable income") by use of allocations and apportionments, including the abovementioned tangible property, wages and salaries and gross receipts fractions.

It is perfectly clear, and we do not find appellant arguing otherwise, that appellant transacts all of its business in Pennsylvania. Hence, under the wording of the Act, appellant is not entitled to apportion any part of its net income outside of Pennsylvania.

While the State argues before us that appellant's income should all be allocated to Pennsylvania by applying the allocation fractions at 100% each to such income and that the Department of Revenue followed this method in determining appellant's tax, we believe the State has misinterpreted both the statute and what the Department did. As just pointed out, the statute does not permit resort to the fractions in a case like this one; it requires simply that tax be imposed at six percent on all of appellant's net income (federal taxable income). Moreover, in resettling appellant's tax, the taxing departments did not resort to the allocation fractions; they simply did what the statute requires and taxed the total income at six percent. The court below also pointed out that this was the correct procedure, and the State apparently recognizes this difference for it refers to the lower court's method as an "alternative theory." This, it is not; it is the only statutorily prescribed "theory" and the only one which could be applied here within the terms of the Act.

Hence, we are faced squarely with a situation where the statute permits no allocation and a claim that, in this case, the statute is unconstitutional unless an extrastatutory method of allocation is allowed.

We indicated at the inception of the corporate net income tax that if in a particular case the apportion-

ment formula provided in the Act produced an illegal result, we would consider the claim in the context of the case. *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421, 184 Atl. 37 (1936). Subsequently, the concept was approved that a corporation carrying on an activity separate from and unrelated to its business in Pennsylvania could exclude from its tax computation for Pennsylvania the proceeds from and factors applicable to this separate business. *Commonwealth v. Baker-Whiteley Coal Co.,* 60 Dauph. 434 (1950), aff'd, 62 Dauph. 207 (1951). We have recognized the availability of this procedure. *Commonwealth v. American Telephone and Telegraph Company,* 382 Pa. 509, 115 A. 2d 373 (1955). However, the very statement of the rule precludes its application to appellant's situation because appellant is not, in carrying on its stevedoring activity, engaged in a separate business unrelated to its Pennsylvania activity.

Therefore, we must decide (1) if appellant is entitled to make some unique extrastatutory allocation of its income and (2) if so, what sort of allocation would be proper. Appellant's argument is that while it is proper for a state to impose a tax on the net income of a corporation, such a tax must be properly apportioned so as fairly to impose tax only upon the corporation's "local activities;" that stevedoring is not a "local activity" but an integral part of foreign commerce; and, therefore, that receipts from stevedoring cannot be taxed by a state since such activities are beyond the jurisdiction of the state. Alternatively, appellant argues, stevedoring is part of the exporting process; and no tax can be imposed on such activity without violating the Federal Constitution's prohibition[10] against a state's imposing an impost or duty on imports or exports.

———
[10] Ibid,

As the record makes abundantly clear, appellant is not engaged exclusively in foreign commerce. Rather, it is engaged in a combination of foreign, interstate and intrastate commerce. In such a situation it has long been held that a state may impose a tax or excise on the privilege of doing business within the state and require such a tax to be measured by the net income of the corporation derived from all of its activities as long as that income is fairly apportioned to the taxing state by reference to in-state factors. *Memphis Natural Gas Co. v. Beeler,* 315 U. S. 649, 86 L. Ed. 1090, 62 S. Ct. 857 (1942) ; *Bass, Ratcliff & Gretton, Ltd. v. State Tax Commission,* 266 U. S. 271, 69 L. Ed. 282, 45 S. Ct. 82 (1924). Moreover, it would appear to be immaterial if the tax in such a case is laid directly on the net income rather than on the privilege of doing business and measured by such income. *Underwood Typewriter Co. v. Chamberlin,* 254 U. S. 113, 65 L. Ed. 165, 41 S. Ct. 45 (1920).

Furthermore, it has more recently been determined that a state may impose a properly apportioned tax on the net income of a corporation engaged solely in interstate commerce activities in such state. *Northwestern States Portland Cement Company v. Minnesota,* 358 U. S. 450, 3 L. Ed. 2d 421, 79 S. Ct. 357 (1959). In such a situation a state necessarily is gathering tax from what appellant here would refer to as a "nonlocal activity." The problem is that appellant confuses the concept of "local activity" with the income derived from such activity. What the Supreme Court of the United States has upheld is a tax on or measured by all net income apportioned only by reference to activities and property producing the income. Where all of these activities take place in one state and all the property is located in the same one state, as here, all of the net income, regardless of its source, is subject to tax. Appellant, agreeing that it

cannot exclude directly its income from foreign commerce, wants to accomplish that result indirectly by creating allocation fractions in which exclusion from the numerators are computed by reference to the receipts from foreign commerce rather than by reference to the factors measuring the activities carried on by appellant in Pennsylvania which produce the receipts.

In other words, there is no constitutional restriction upon a state's imposing a tax on or measured by the net income of a corporation engaged in all forms of commerce within the state as long as the state provides an apportionment formula permitting a reduction of tax where out-of-state factors exist. "Out-of-state factors" is not a phrase, however, which is synonymous with foreign or interstate commerce itself; it refers, rather, to factors which indicate the presence of a corporation in another state or country. Thus, where a corporation is transacting part of its business outside of Pennsylvania, this state permits it to apportion out of the state values and amounts based on tangible property, wages and salaries and gross receipts. On the other hand, where a corporation conducts all its activity in one state, even if that activity be a combination of foreign, interstate and intrastate commerce, there exists no basis for saying that some other apportionment, based on excluding directly the income derived from foreign and interstate commerce, must be permitted.

Illustrative of this distinction are two of the cases above mentioned. In *Underwood Typewriter Co. v. Chamberlin*, supra, the company reported to the State of Connecticut, where it carried on its manufacturing activity, that it had a net profit for the year of $1,-336,586.13. Connecticut had a one-factor apportionment formula based on tangible property, and application of this factor resulted in attributing 47 percent of the company's net profits to Connecticut for taxa-

tion. The company complained, in part, because only about 3 percent of the profits were received in Connecticut. The Supreme Court refuted this contention, pointing out that the operations of the company giving rise to the profits were conducted in a substantial part in Connecticut even though the sales were made elsewhere.

Again, in *Bass, Ratcliff & Gretton, Ltd. v. State Tax Commission,* supra, the company was held to be liable for tax in New York even though its New York activities showed a loss. Application of New York's single apportionment factor based upon assets to all of the company's income from all its business, however, resulted in tax. The company's contention that New York was thus taxing income from business carried on elsewhere was rejected.

In a similar vein, involving companies conducting business in intrastate, interstate and foreign commerce, as here, is *Matson Navigation Company v. State Board of Equalization of California,* 297 U. S. 441, 80 L. Ed. 791, 56 S. Ct. 553 (1936). There, the Supreme Court upheld inclusion of the net income from all activities in the measure of the tax against the companies' contention that the net income from foreign and interstate commerce should all be excluded. Thus, we must conclude on this aspect of the case that no violation of the commerce clause of the Federal Constitution is involved in Pennsylvania's taxation of appellant here.

Appellant's second contention—that Pennsylvania's tax, as applied here, violates the export-import clause of the Federal Constitution—is likewise without merit. It is true that this clause prohibits more than just a tax upon the articles of export and import themselves. *Canton Railroad Company v. Rogan,* 340 U. S. 511, 95 L. Ed. 488, 71 S. Ct. 447 (1951). It is equally true that it may invalidate a tax otherwise valid un-

der the commerce clause. *Joseph v. Carter & Weekes Stevedoring Co.*, 330 U. S. 422, 91 L. Ed. 993, 67 S. Ct. 815 (1947) (partial dissent by DOUGLAS, J.). As indicated by the dissenting opinion writer in this last case, the scope of this clause protects from taxation any step in the import-export process—such as stevedoring—and a state tax on the gross receipts from stevedoring would presumably infringe upon this protection. This is not the present case, however. Pennsylvania imposes no tax upon appellant's gross receipts; rather, the tax is upon net income, a factor far removed from the import-export process. Accord, *Peck & Company, Inc. v. Lowe*, 247 U. S. 165, 62 L. Ed. 1049, 38 S. Ct. 432 (1918). Accordingly, appellant's contention must be rejected.

The judgments of the court below are affirmed.

Mr. Chief Justice BELL dissents.