Commonwealth of Pennsylvania *v.* Atlantic & Gulf Stevedores, Inc., Appellant.

Argued March 9, 1977, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Richard J. Raab,* for appellant.

*R. Scott Shearer,* Deputy Attorney General, with him *Donald J. Murphy,* Deputy Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, June 13, 1977:

This is an appeal from an order of the Board of Finance and Revenue (Board) refusing the petition for review of Atlantic & Gulf Stevedores, Inc. (appellant) with respect to the resettlement by the Department of Revenue (Department) of appellant's 1964 Corporate Income Tax (CIT) return.[1] The facts have been stipulated and are essentially as follows.

Appellant is a Pennsylvania corporation organized and chartered in 1933 for the purpose of conducting a general stevedoring business. Appellant owns no real property in Pennsylvania or elsewhere but leases two piers and office space in Philadelphia and occupies an office in New York, New York. Appellant's tangible personal property in Pennsylvania consists of office furniture and equipment, four trucks and certain stevedoring gear. Appellant employs approximately fifteen office personnel in Philadelphia, including a port manager, and approximately five mechanics. Ship

---

[1] This tax was imposed by the Corporation Income Tax Law, Act of August 24, 1951, P.L. 1417, *as amended, formerly* at 72 P.S. §3420n-1 et seq., repealed by Section 505 of the Act of March 4, 1971, P.L. 88, 72 P.S. §7505. The tax is now imposed by Section 502 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7502.

bosses and longeshoremen are hired on a day-to-day basis according to need. Appellant does not have any employees working in the New York office other than its officers, although it does pay a proportionate part of the salaries of personnel in departments of its parent corporation who spend part of their time on appellant's work.

During 1964, appellant was engaged in a general stevedoring business which consists of loading and unloading ships carrying waterborne cargo in foreign and interstate commerce exclusively.[2] Appellant is not engaged in any intrastate commerce in Pennsylvania. All contracts are negotiated and executed, and all executive functions are performed in New York. The Philadelphia office bills for services and monies are received at both the New York and Philadelphia offices. The stipulation recites that appellant is not subject to and does not pay any corporate taxes in any state other than Pennsylvania.

For the year 1964, appellant timely filed a CIT return reporting net income of $351,476.67 and tax due of "none", being of the view that it was not subject to CIT. The Department settled tax against the appellant in the amount of $21,088.60 (6% of $351,-476.67). Appellant's petition for resettlement and petition for review were refused; however, appellant agrees that if it is subject to the tax, the amount settled by the Department is correct.

Appellant advances a number of arguments in support of its view that it is not subject to CIT. First relying on language in *Commonwealth v. Eastern Motor Express, Inc.*, 398 Pa. 279, 287-88, 157 A.2d

---

[2] While the appellant itself is not *directly* engaged in interstate and foreign commerce, stevedoring has been held to be substantially a continuation of interstate and foreign transportation. *Joseph v. Carter & Weekes Stevedoring Co.*, 330 U.S. 422 (1947) ; *Puget Sound Stevedoring Co. v. State Tax Commission*, 302 U.S. 90 (1937).

516

79, 84 (1959), appellant argues that only *foreign* corporations engaged exclusively in interstate and foreign commerce are subject to CIT and that it, being a domestic corporation so engaged, cannot be taxed thereunder. Further, it argues that subjecting it to CIT while domestic corporations generally (those not engaged exclusively in interstate and foreign commerce) pay the Corporate Net Income Tax (CNIT)[3] instead, violates the uniformity provisions of the Pennsylvania Constitution.[4]

We note first that, by its terms, the CIT clearly applies to the appellant. Section 3 of the CIT imposes what is characterized as a property tax on "[e]very corporation carrying on activities in this Commonwealth or owning property in this Commonwealth . . . on net income derived from sources within this Commonwealth . . . ." Section 2 then defines "Corporation" as "[a] corporation . . . *either organized under the laws of this Commonwealth,* the United States, or any other state . . ." and defines "Sources within this Commonwealth" as including "any activities carried on in this Commonwealth, *regardless of whether carried on in intrastate, interstate or foreign commerce."* (Emphasis added.) Moreover, appellant's reliance on *Eastern Motor Express, supra,* is based on language taken out of context in that case. Precisely the same argument based on the same language was specifically rejected in *Commonwealth v. Baltimore and Cumberland Valley Railroad Extension Co.,* 435 Pa. 378, 380-81, 257 A.2d 249, 250 (1969), a

---

[3] This tax was imposed by the Corporate Net Income Tax Act, Act of May 16, 1935, P.L. 208, *as amended, formerly* at 72 P.S. §3420a et seq., repealed by Section 411 of the Act of March 4, 1971, P.L. 86, 72 P.S. §7411. The tax is now imposed by Section 402 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7402.

[4] Pa. Const. art. VIII, §1.

case which upheld the application of CIT to a *domestic* corporation. Appellant's attempt to distinguish *Baltimore and Cumberland Valley, supra,* on the ground that the taxpayer there was engaged solely in *intrastate* commerce, even if true,[5] must fail in view of the clear provision of Section 2 of the CIT, cited above, which specifically subjects to taxation activities in interstate or foreign as well as intrastate commerce. In addition, the fact that *Baltimore and Cumberland Valley, supra,* upheld the application of CIT to a domestic corporation clearly *not* engaged in interstate and foreign commerce, illustrates the error in appellant's premise that it, among domestic corporations, has been singled out to pay CIT *because it is so engaged.*

Thus, while the CIT, by its terms, applies to both domestic and foreign corporations and purports, at least, to tax business activities whether related to interstate and foreign or intrastate commerce, it appears that, in reality, corporations, both domestic and foreign, which engage exclusively in interstate and foreign commerce are the major class of corporations subject to CIT. This is so for two reasons. First, Section 3 of the CIT contains the following proviso, which greatly restricts its application:

> Provided, however, That such net income [derived from sources within this Commonwealth] shall not include income for any period for which the corporation is subject to taxation under the Corporate Net Income Tax Act . . . .

Second, the Commonwealth is, and apparently has been for some time, of the opinion that corporations, both foreign and domestic, which are engaged exclusively

---

[5] Actually, the taxpayer in that case was not engaged in any activity at all; the tax was based on its ownership of property in the Commonwealth.

518

in interstate and foreign commerce are not "doing business in this Commonwealth" within the meaning of Section 2 of the CNIT and are, therefore, not taxable thereunder; consequently, it is the Commonwealth's view that such corporations are, if taxable at all, subject to CIT.

While we have serious doubts about the validity of the Commonwealth's construction of "doing business" and, under these facts, see no reason why this appellant, a *domestic* corporation, was not doing precisely that,[6] we need not explore this here. For such

---

[6] Although *Eastern Motor Express, supra,* does hold that *foreign* corporations engaged exclusively in interstate and foreign commerce are subject to CIT, and *Commonwealth v. Camax Co.,* 83 Dauph. 56, 38 Pa. D. & C. 2d 224 (1964), can possibly be construed to indicate the same as to domestic corporations so engaged, neither case, contrary to the Commonwealth's brief, supports the Commonwealth's proposition that such activity does not constitute "doing business." While "doing business" is an elusive term which is not defined in the CNIT and has no clearly established meaning under case law, to the extent it has been defined it has been equated with an exercise of the corporate power within the state for the purposes for which the corporation was chartered or with the employment or use of property for such purposes. *See Commonwealth v. South Philadelphia Terminal, Inc.,* 75 Dauph. 233 (1960), *aff'd,* 404 Pa. 293, 171 A.2d 758 (1961); *Commonwealth v. Budd Realty Corp.,* 54 Dauph. 387 (1943); *Commonwealth v. Reading and Southwestern St. Ry. Co.,* 54 Dauph. 277, 50 Pa. D. & C. 208 (1943); *Commonwealth v. Delaware River R.R. and Bridge Co.,* 48 Dauph. 18, 37 Pa. D. & C. 449 (1939). *Cf. Commonwealth v. Am. Bell Tel. Co.,* 129 Pa. 217, 18 A. 122 (1889). Applying this concept to the present case, we do not see why the appellant, which was *chartered in Pennsylvania* for the purpose of stevedoring and which is doing precisely that in Philadelphia is not "doing business" in the Commonwealth, albeit "business" in interstate and foreign commerce. The source of the confusion in this area, we believe, is that the CNIT is an excise or franchise tax on the privilege of doing business in the Commonwealth and such taxes could not, at least in the past, be imposed on *foreign* corporations engaged *exclusively in interstate commerce* because of the Commerce Clause under the holding

a discussion would only be relevant to a determination of whether or not the appellant should have been subject to CNIT rather than CIT, an issue which the appellant has raised only tangentially and in a way which can be answered quite simply. In this regard, appellant has merely alleged that it is "possibly" amenable to taxation under the CNIT, unless its income derived from foreign and interstate commerce is excluded, and that it cannot be subject to an additional tax under the CIT. The obvious answer to this is that Section 3 of the CIT precludes, as the Commonwealth readily admits, the application of both taxes to any one corporation. Further, if appellant felt that it should have been subject to CNIT despite the Commonwealth's view to the contrary, it should have filed a CNIT return. Having failed to do so, it cannot now claim exemption from CIT on the basis that it *was* "subject to taxation under the Corporate Net Income Tax Act" within the meaning of Section 3 of the CIT. Conversely, if, as appellant seems to

---

in *Spector Motor Service, Inc. v. O'Connor*, 340 U.S. 602 (1951), a case recently overruled by *Complete Auto Transit, Inc. v. Brady*, 45 U.S.L.W. 4259 (U.S. March 7, 1977). It may be that the Commonwealth, while recognizing that such foreign corporations are (or were) not subject to CNIT, has somehow come to believe that the reason for this is that engaging in interstate and foreign commerce is not "doing business" rather than because of the Commerce Clause and the rule in *Spector, supra*. This notion of of what is not "doing business" was then apparently applied to domestic corporations. Whether domestic corporations enjoy protection under the Commerce Clause which is coextensive with that of foreign corporations is a complex question not answered in *Spector* or any of the other leading cases in this field, virtually all of which, perhaps significantly, involve *foreign* corporations. Thus, while this appellant may or may not have been subject to CNIT in 1964, an issue not directly raised and one which we need not decide, any immunity from CNIT would, as with foreign corporations, have to be based on the Commerce Clause rather than on the Commonwealth's notion of "doing business."

suggest, income derived from interstate and foreign commerce is not taxable under the CNIT, then such income would, of necessity, fall within the scope of the CIT, which clearly does tax income from such a source. The whole point of this is that rather than press its "right" to pay the CNIT and thus escape the CIT, appellant has chosen instead to attack the CIT on its own terms, no doubt hoping to escape paying either; it is on the basis of appellant's direct attack, and not the collateral issue of its possible subjectivity to CNIT, that we will decide this case.

Turning back then to appellant's argument that the imposition of CIT violates the Uniformity Clause of the Pennsylvania Constitution, we have already seen that while foreign and domestic corporations engaged exclusively in interstate commerce are the major class subject to CIT, although not for the reason suggested by the Commonwealth, other domestic corporations have also been taxed thereunder; see *Baltimore and Cumberland Valley, supra,* and the cases cited therein. This essentially refutes the premise upon which the uniformity argument is based—that is, that appellant has been singled out among domestic corporations generally to pay CIT. Moreover, appellant has not alleged that it is being treated any differently than other domestic corporations engaged exclusively in interstate and foreign commerce nor has it shown that such classification is arbitrary or unreasonable. The fact is that the Commonwealth has two alternative statutory schemes for taxing corporate income. The major tax is the CNIT imposed (under Section 2) on corporations "doing business in this Commonwealth, or having capital or property employed or used in this Commonwealth." The alternative or "catchall" tax is the CIT, imposed (under Section 3) on corporations "carrying on activities . . . or owning property in this Commonwealth" and which are not,

for whatever reason, already subject to CNIT. *See Commonwealth v. Eastern Motor Express, Inc., supra.* This appellant, in the Commonwealth's view and apparently in its own view, was not subject to CNIT and was, therefore, clearly within the application of the CIT. Although the CNIT purports to be an "excise tax" while the CIT purports to be a "property tax,"[7] they are imposed at the identical rate (6% in 1964) on "net income," the definition and apportionment of which, under both Acts, is substantially the same. *Eastern Motor Express, supra* at 299, 157 A.2d at 90. Under these circumstances, we cannot say that appellant, because it is subject to CIT while most other domestic corporations are subject to CNIT, has demonstrated any "substantial inequality" in the operation or effect of the tax or in the tax burden that it bears, so as to support a violation of the Uniformity Clause. *See Amidon v. Kane,* 444 Pa. 38, 279 A.2d 53 (1971), and the cases cited therein.

Appellant next argues that the CIT, as applied to it, is an excise or franchise tax on the privilege of

---

[7] The CNIT, although most frequently held to be an excise tax on the privilege of doing business, *Commonwealth v. Minnesota Mining and Mfg. Co.,* 402 Pa. 612, 168 A.2d 560 (1961), has, on occasion been declared a "property tax"; *see, e.g., National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 98 A.2d 182 (1953). Similarly, the CIT, although generally acknowledged to be a property tax, has, at least as to certain taxpayers been held to be an excise tax. *See Commonwealth v. Eastman Kodak Co.,* 385 Pa. 607, 615, 124 A.2d 100, 103 (1956). This only serves to indicate the truth of Justice (later Chief Justice) BELL's comment:

> The distinction between a property tax and a privilege or excise tax is sometimes so fine or so nebulous and the legislative Acts are sometimes so broadly or confusingly or overlappingly drawn, that the decisions throughout the entire Country on this vexing subject are at times vacillating, confusing and irreconcilable. . . . *Eastern Motor Express, supra* at 298, 157 A.2d at 89n. 7. (Citations omitted.)

doing business in the Commonwealth and that its imposition on a corporation engaged exclusively in interstate and foreign commerce violates the Commerce Clause of the United States Constitution.[8] Fortunately, we may dispose of this argument without inquiring as to whether the CIT is, as applied to appellant, such a tax or instead is, as it purports to be, a property tax on net income.[9] For even assuming that the CIT is an excise tax on the privilege of doing business, appellant's argument is foreclosed by the recent case of *Complete Auto Transit, Inc. v. Brady*, 45 U.S.L.W. 4259 (U.S. March 7, 1977). *See also Commonwealth v. Universal Carloading and Distributing Co., Inc.*, Pa. Commonwealth Ct. , 372 A.2d 41 (1977). In *Complete Auto Transit*, the United States Supreme Court, reversing *Spector Motor Service, Inc. v. O'-Connor*, *supra* note 6, held that a state tax on the privilege of doing business does not violate the Commerce Clause when applied to an exclusively interstate activity with a substantial nexus with the taxing state, where such tax is fairly apportioned, does not discriminate against interstate commerce and is fairly related to services provided by the state. Under the facts as stipulated, appellant, a *domestic* corporation which owes its very existence to the Commonwealth and which carries on virtually all its activities (ex-

---

[8] U.S. Const. art. I, §8, cl. 3.

[9] The CIT has, in at least two cases, been held to be an excise tax on the privilege of doing business when applied to *foreign* corporations which had only minimal contacts with the Commonwealth; *Commonwealth v. Eastman Kodak Co.*, *supra* note 7; *Roy Stone Transfer Corp. v. Messner*, 377 Pa. 234, 103 A.2d 700 (1954). The facts in this case are readily distinguishable from those in *Kodak* and *Roy Stone*. On the other hand, if the CIT is, in fact, a property tax on net income, such taxes have long been held valid under the Commerce Clause, even when applied to corporations engaged exclusively in interstate commerce. *See Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450 (1959).

cept for executive functions) in Pennsylvania, cannot possibly argue that it or its activities lack sufficient nexus with the Commonwealth. Similarly, it cannot be argued that the tax discriminates against interstate commerce or that it is unrelated to services provided by the state. Finally, while appellant does purport to attack the apportionment formula set forth in Section 2 of the CIT, its argument on this point is without merit and, in our view, is not even related to the issue of apportionment. As we understand it, appellant does not, as it must to qualify for apportionment, argue that it is carrying on activities both "within and without this Commonwealth" under Section 2, even though it could possibly do so in view of its executive presence in New York. *See Commonwealth v. Hellertown Manufacturing Co.,* 438 Pa. 134, 264 A.2d 382 (1970). Instead, appellant argues that the nature of its business, by definition, takes it out of the constitutionally permissible scope of the tax altogether. As such, this argument is indistinguishable from that of the appellant in *Commonwealth v. Northern Metal Co.,* 416 Pa. 75, 204 A.2d 467 (1964), which the Supreme Court summarized as follows:

> Appellant's argument is that while it is proper for a state to impose a tax on the net income of a corporation, such a tax must be properly apportioned so as fairly to impose tax only upon the corporation's 'local activities'; that stevedoring is not a 'local activity' but an integral part of foreign commerce; and, therefore, that receipts from stevedoring cannot be taxed by a state since such activities are beyond the jurisdiction of the state.

416 Pa. at 82, 204 A.2d at 471.[10]

---

[10] Although *Northern Metal* involved the CNIT, the principle of apportionment and the formula employed are substantially the same under the CIT.

The Court rejected this argument, reasoning that:

> [T]here is no constitutional restriction upon a state's imposing a tax on or measured by the net income of a corporation engaged in all forms of commerce within the state as long as the state provides an apportionment formula permitting a reduction of tax where out-of-state factors exist. 'Out-of-state factors' is not a phrase, however, which is synonymous with foreign or interstate commerce itself; it refers, rather, to factors which indicate the presence of a corporation in another state or country.

416 Pa. at 84, 204 A.2d at 472.

This appellant, like that in *Northern Metal,* is attempting, in effect, to exclude income from tax on an apportionment theory on the basis that it is derived from interstate and foreign commerce rather than on the basis that the corporation is carrying on activities both within and without this Commonwealth. There is simply no legal foundation for such a theory. The fact that appellant's activities are in furtherance of interstate and foreign commerce in no way takes them out of the scope of taxable activities under the CIT; quite to the contrary, Section 2 specifically defines "Sources within this Commonwealth" as including "any activities carried on in this Commonwealth, *regardless of whether carried on in intrastate, interstate or foreign commerce."* (Emphasis added.) *See also West Publishing Co. v. McColgan,* 27 Cal. 2d 705, 166 P.2d 861, *aff'd per curiam,* 328 U.S. 823 (1946). Appellant's attempt to distinguish *Northern Metal, supra,* as involving a corporation engaged in both intrastate as well as interstate commerce is of no avail. It is true that there is a long-established distinction drawn in Commerce Clause cases whereby states could constitutionally impose privilege taxes measured by net income derived from all activities (including inter-

state and foreign commerce) on *foreign* corporations which engaged in *some* (even if minimal) intrastate activity but could not do so as to such corporations engaged exclusively in interstate and foreign commerce. *See, e.g., Memphis Natural Gas Co. v. Beeler,* 315 U.S. 649 (1942). However, even if that distinction was, in the past, applicable to a *domestic* corporation, it has been obliterated, in our view, by *Complete Auto Transit, supra.* Consequently, for all the reasons discussed above, we find that the imposition of CIT on this appellant involves no violation of the Commerce Clause.

Appellant's final and related argument, which we find equally without merit, is that the imposition of CIT violates the Import-Export Clause of the United States Constitution.[11] This argument was raised and rejected in the context of stevedoring activities in *Northern Metal, supra.* Although that case involved the CNIT, the reasoning is equally appropriate here. Moreover, in the recent case of *Michelin Tire Corp. v. Wages,* 423 U.S. 276, 287 (1976), the U. S. Supreme Court stated:

> The Import-Export Clause clearly prohibits state taxation based on the foreign origin of the imported goods, but it cannot be read to accord imported goods preferential treatment that permits escape from uniform taxes imposed without regard to foreign origin for services which the state supplies.

It is obvious that the CIT imposes a uniform tax on the net income of corporations carrying on activities in the Commonwealth and that it is not, by any stretch of the imagination, based on the foreign origin of goods. The mere fact that appellant derives its income from loading and unloading foreign goods provides no basis for exemption from this tax.

---

[11] U. S. Const. art. 1, §10, cl. 2.

The order of the Board of Finance and Revenue is affirmed.

### ORDER

Now, June 13, 1977, the decision of the Board of Finance and Revenue in refusing appellant's petition for review is hereby affirmed. Unless exceptions are filed within thirty (30) days hereof, the Chief Clerk is hereby directed to enter judgment in favor of the Commonwealth and against the appellant in the amount of $21,088.60 plus appropriate penalty and interest.