Roy Stone Transfer Corporation, Appellant, *v.* Messner.

Argued November 18, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

236

*Frank A. Sinon,* with him *Rhoads, Sinon & Reader,* for appellant.

*Edward Friedman,* Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, for appellees.

*J. Harry LaBrum,* with him *James M. Marsh* and *Conlen, LaBrum & Beechwood,* for Spector Motor Service, Inc., amicus curiae.

*H. Ober Hess,* with him *Robert R. Batt, William R. Spofford* and *Ballard, Spahr, Andrews & Ingersoll,* for amici curiae.

OPINION BY MR. JUSTICE BELL, March 24, 1954:

The plaintiff,* a Virginia corporation, with its principal office located at Martinsville, Virginia, is engaged in the business of transporting property as a common carrier exclusively in interstate commerce. The defendants are the fiscal officers of the Commonwealth. Plaintiff engages in interstate transportation over irregular routes, pursuant to a certificate of public convenience issued by the Interstate Commerce Commission; and carries on no activities in this Commonwealth other than interstate commerce.

Plaintiff makes deliveries by truck of interstate shipments to points within Pennsylvania, and at times picks up property here for delivery outside of the Commonwealth. Plaintiff has no tangible or intangible property in Pennsylvania; no office or terminal is main-

---

* Two interstate motor carriers intervened as parties plaintiff.

tained in the Commonwealth; it pays no wages and has no payroll in Pennsylvania; and there are no employees of the plaintiff doing any kind of work in this State except those engaged in operating plaintiff's trucks. No contracts, orders or solicitations for the transportation of property of any kind are made or accepted within the Commonwealth and no payments for transportation or services rendered are received by the plaintiff in Pennsylvania.

Plaintiff filed a bill in equity to restrain the officers of the Commonwealth from enforcing the *Corporation Income Tax Law* of August 24, 1951, as reenacted and amended by the Act of December 27, 1951,* because it violated several provisions of the Constitution of the United States and of the Constitution of Pennsylvania. Defendants filed an answer in the nature of a demurrer, admitting all the facts but denying that the Act was unconstitutional. The lower Court sustained the demurrer and dismissed plaintiff's bill.

The first and most important contention is that the Act violates the Interstate Commerce Clause, Article I, §8, of the Constitution of the United States.

The Corporation Income Tax Law of 1951 is a "catch-all" Act and seeks to impose (what it calls) a *property* tax upon the income of all corporations derived from the ownership of property, tangible or intangible, located or having a situs in this Commonwealth, *or* the performance of activities carried on within the Commonwealth regardless of whether carried on in intrastate or interstate commerce. Section 3 of said Act provides: "Every corporation *carrying on activities in this Commonwealth**** by or in the name of itself or any person, partnership, joint-stock associa-

---

* P. L. 1763, 72 PS 3420n.

** Italics throughout, ours.

tion or corporation shall be subject to and shall pay a *State property tax on net income derived from sources within this Commonwealth* at the rate of five per centum per annum upon each dollar of *such net income* received by and accruing to such corporation . . . : Provided, however, That such net income shall not include income for any period for which the corporation is subject to taxation under the *Corporate Net Income Tax Act,* approved the sixteenth day of May, one thousand nine hundred thirty-five (Pamphlet Laws, two hundred eight), as reenacted and amended, according to or measured by net income.

"Except as otherwise provided in this section, the tax hereby imposed shall be in addition to all taxes now imposed on any corporation under the provisions of existing laws."

Section 2 of the Act defines "Sources within this Commonwealth" as follows: " 'Sources within this Commonwealth' includes tangible or intangible property located or having a situs in this Commonwealth, and any activities carried on in this Commonwealth, *regardless of whether carried on in intrastate, interstate, or foreign commerce.*"

Section 3 of the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, as reenacted and amended, provides: "Every corporation shall be subject to, and shall pay *for the privilege of doing business in this* Commonwealth, *or having capital or property employed or used* in this Commonwealth, . . . . *a State excise tax* at the rate of six per centum per annum upon each dollar of *net income* of such corporation."

The Corporate Net Income Tax Act of 1935 imposing a tax on the net income of a corporation based upon its tangible property in Pennsylvania and the wages paid to its employees in Pennsylvania, and that part of its gross receipts attributable to business carried

on within Pennsylvania, was declared to be a *property tax* in spite of the declaration in the Act that it was an excise tax; and as such, its Constitutionality was sustained: *Blauner's, Inc. v. Philadelphia,* 330 Pa. 342, 345, 198 A. 889; *National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 612, 98 A. 2d 182; *Murray v. Philadelphia,* 364 Pa. 157, 169, 71 A. 2d 280; *Philadelphia v. Samuels,* 338 Pa. 321, 326, 12 A. 2d 79; see also to the same effect, *Kelley v. Kalodner,* 320 Pa. 180, 181 A. 598.

While the label in each Act is different, the language of each Act and the formula in each is almost identical. However, there is this important difference: While each formula has the same three factors—tangible property in Pennsylvania, wages paid, and gross receipts—under the 1935 Act the wages paid are applicable to persons employed in Pennsylvania and the gross receipts are likewise restricted to receipts from business conducted in Pennsylvania; whereas the 1951 Act applies to and includes wages payable to employees employed outside of Pennsylvania which may be attributable to the work they perform in Pennsylvania, and the gross receipts to business attributable to Pennsylvania, but negotiated or performed by persons employed outside of Pennsylvania.

The general principle is long and well established that a State cannot tax Interstate Commerce as such or the receipts derived therefrom, nor can it tax a person or corporation for the privilege of engaging in interstate commerce. "It long has been settled that a state cannot lay a tax on interstate commerce in any form, whether on the transportation of subjects of commerce, the receipts derived therefrom, or the occupation or business of carrying it on. *Leloup v. Port of Mobile,* 127 U. S. 640, 648; *Kansas City Ry. Co. v. Kansas,* 240 U. S. 227, 231, and cases cited": *Ozark Pipe Line Corp. v. Monier,* 266 U. S. 555, 562. This

principle has been reiterated in *Alpha Portland Cement Company v. Massachusetts*, 268 U. S. 203, 217; *Freeman v. Hewit*, 329 U. S. 249; *Joseph v. Carter & Weekes Stevedoring Co.*, 330 U. S. 422; *Keystone Metal Company v. Pittsburgh*, 374 Pa. 323, 97 A. 2d 797; *Dixie Ohio Express Co. v. State Revenue Commission*, 306 U. S. 72; *Sprout v. South Bend*, 277 U. S. 163; *Interstate Transit, Inc. v. Lindsey*, 283 U. S. 183; *Gwin et al. v. Henneford*, 305 U. S. 434; *Norfolk & Western Railroad Co. v. Pennsylvania*, 136 U. S. 114; *General Trading Co. v. State Tax Commission*, 322 U. S. 335; and as recently as 1951 in *Spector Motor Service, Inc. v. O'Connor*, 340 U. S. 602.

In *Dixie Ohio Express Co. v. State Revenue Commission*, 306 U. S., supra, the Court said (page 76): *"It is elementary that a State may not impose a tax on the privilege of engaging in interstate commerce.* Sprout v. South Bend, 277 U. S. 163, 171. Interstate Transit, Inc. v. Lindsey, 283 U. S. 183, 185. Gwin, White & Prince, Inc. v. Henneford, 305 U. S. 434, . . .".

In *Spector Motor Service, Inc. v. O'Connor*, 340 U. S., supra, the Court said (page 609): "This Court heretofore has struck down, under the Commerce Clause, state taxes upon the privilege of carrying on a business that was exclusively interstate in character. The constitutional infirmity of such a tax persists no matter how fairly it is apportioned to business done within the state. . . ."

The principle that a State cannot tax Interstate Commerce has not stood like the Rock of Gibralter. It has been chipped and chiseled, broken and cut so often that several small but constantly growing rocklets have been split off and formed what the law now recognizes as "Exceptions". For example, it is now well settled that a State may impose a fair, reasonable and non-

discriminatory tax upon carriers who use its highways for the cost, maintenance, and other proper highway expenses *as compensation for the use* of its highways even though such carrier is engaged partly or exclusively in interstate commerce: *Interstate Busses Corporation v. Blodgett*, 276 U. S. 245; *Dixie Ohio Express Co. v. State Revenue Commission*, 306 U. S. 72; *Clark v. Gray, Inc.*, 306 U. S. 583; *Capitol Greyhound lines v. Brice*, 339 U. S. 542; *Aero Transit Co. v. Commissioners*, 332 U. S. 495; *Hendrick v. Maryland*, 235 U. S. 610; *Shirks Motor Express Corp. v. Messner*, 375 Pa. 450, 100 A. 2d 913. The Commonwealth does not and could not successfully contend that the challenged Act falls within this exception.

Another exception has been recognized, namely, that a State may tax persons or corporations engaged in interstate commerce on their local property or facilities, and on certain of their local activities: *Keystone Metal Co. v. Pittsburgh*, 374 Pa. 323, 97 A. 2d 797; *Commonwealth v. Quaker Oats Co.*, 350 Pa. 253, 261, 262, 38 A. 2d 325; *International Harvester Co. v. Department of Treasury*, 322 U. S. 340; *Department of Treasury of Indiana v. Wood Preserving Corporation*, 313 U. S. 62; *Western Live Stock v. Bureau of Revenue*, 303 U. S. 250; *Virginia v. Imperial Coal Sales Co., Inc.*, 293 U. S. 15; *Minnesota v. Blasius*, 290 U. S. 1; *Nashville & St. L. Ry. v. Wallace*, 288 U. S. 249; *Old Dominion S.S. Co. v. Virginia*, 198 U. S. 299; *Chicago v. Willett Company*, 344 U. S. 574; *Ott v. Mississippi Barge Line Co.*, 336 U. S. 169; *Pullman's Palace Car Company v. Pennsylvania*, 141 U. S. 18; *United States Glue Co. v. Town of Oak Creek*, 247 U. S. 321; *International Shoe Co. v. Shartel*, 279 U. S. 429; *Southern Pacific Co. v. Gallagher*, 306 U. S. 167; *McGoldrick v. Berwind-White Coal Mining Co.*, 309 U. S. 33, 46; *Norton Company v. Department of Revenue of Illinois*,

340 U. S. 534; *Underwood Typewriter Co. v. Chamberlain*, 254 U. S. 113, 119, 120; *Memphis Natural Gas Co. v. Stone*, 335 U. S. 80; *West Publishing Company v. McColgan*, 328 U. S. 823.

The Commonwealth admits, as it must, that the challenged Act is unconstitutional if it is a tax *on the privilege* of engaging in Interstate Commerce. It contends that it is *a property tax* and that such tax is lawful even though imposed upon those engaged in Interstate Commerce.

Plaintiff, on the other hand, contends that the Act is an excise tax, not a property tax; that it owns no property in Pennsylvania and engages in no local activities in Pennsylvania; but that whether the tax be considered an excise tax or a property tax, as to which our decisions are not harmonious,* the Act is unconstitutional.

The challenged Act states that it is a tax on property—a property tax on net income. This declaration is entitled to weight, but the mere name that may be given in a statute to a tax is not determinative of its real nature; the nature of a tax depends upon its incidence, not upon its label. If, therefore, in reality, i.e., in its practical operation and effect, the tax is not what it purports to be, the realities control: *Spector Motor Service, Inc. v. O'Connor*, 340 U. S. 602, 608; *Dawson v. Kentucky Distillers Co.*, 255 U. S. 288, 292;

---

* Cf. *National Biscuit Co. v. Philadelphia*, 374 Pa. 604, 612, 98 A. 2d 182; *Murray v. Philadelphia*, 364 Pa. 157, 71 A. 2d 280; *Blauner's, Inc. v. Philadelphia*, 330 Pa. 342, 198 A. 889; *Philadelphia v. Samuels*, 338 Pa. 321, 12 A. 2d 79; *Com. v. Curtis Publishing Co.*, 363 Pa. 299, 69 A. 2d 410; *Turco Paint & Varnish Co. v. Kalodner*, 320 Pa. 421, 184 A. 37; *Com. v. Warner Bros.*, 345 Pa. 270, 27 A. 2d 62; *Com. v. Electrolux Corp.*, 362 Pa. 333, 67 A. 2d 105; *Com. v. Bayuk Cigars, Inc.*, 345 Pa. 348, 28 A. 2d 134; *Com. v. Columbia Gas & Elec. Corp.*, 336 Pa. 209, 8 A. 2d 404.

*Interstate Transit, Inc. v. Lindsey,* 283 U. S. 183, 190;
*Murray v. Philadelphia,* 364 Pa. 157, 71 A. 2d 280;
*Armour & Company v. Pittsburgh,* 363 Pa. 109, 112,
69 A. 2d 405; *Arrott's Estate,* 322 Pa. 367, 185 A. 697;
*National Biscuit Co. v. Philadelphia,* 374 Pa. 604, 615,
98 A. 2d 182.

In this particular field, the principles may be thus
summarized:

1. A State may not impose a tax on interstate com-
merce or the receipts therefrom or the privilege of
carrying it on.

2. A State may impose and collect taxes on corpo-
rations engaged exclusively in interstate commerce
under the following conditions:

(a) The tax must be predicated upon the owner-
ship of property within the taxing State, or upon local
activities which occur within the State and are not an
integral or realistically inseparable part of interstate
commerce.

(b) The property or activity taxed must be of such
a local nature that it may not become the object of
multiple State taxation.

(c) The tax must be fair and reasonable and there
must be no discrimination between corporations engaged
in interstate and intrastate commerce.

While these principles appear to be now well settled,
cases on or near the borderline constantly arise which
make their application difficult.

It would be a Herculean, if not impossible task, to
review and harmonize the myriad decisions of the Su-
preme Court of the United States on the subject of
interstate commerce and exactly what incidents thereof
may be constitutionally taxed by the States. The dis-
senting opinions in many of those cases make clear
that the task of reconciling all the decisions is more

difficult than was the task of Theseus as he threaded his way through the famous Cretan Labyrinth in search of the Minotaur. Suffice it to say that in our judgment (1) the two cases mainly relied upon by the Commonwealth, namely, *West Publishing Company v. McColgan,* 328 U. S., supra, and *Memphis Natural Gas Co. v. Stone,* 335 U. S., supra, are clearly distinguishable since the tax there imposed (on a foreign corporation) was sustained because (a) of the tangible property located in the State, and (b) of the many local activities and services carried on therein; and (2) this case is controlled by *Michigan-Wisconsin Pipe Line Co. v. Calvert,* 347 U. S. 157, and *Joseph v. Carter & Weekes Stevedoring Co.,* 330 U. S. 422.

In *Michigan-Wisconsin Pipe Line Co. v. Calvert,* supra, Texas levied a so-called occupation tax (of 9/20 of 1 cent per thousand cubic feet) for the privilege of engaging in the "taking or retaining of natural gas at the gasoline plant outlet of another company which produced the gas." That tax, like the instant tax, was levied in addition to all other licenses and taxes. Michigan-Wisconsin Pipe Line Co. bought from Phillips Petroleum Company, in Texas, and took at Phillips' outlet in Texas a supply of natural gas produced by Phillips from its wells in Texas. Michigan-Wisconsin had constructed a pipe line extending from Texas to Michigan and Wisconsin; it sold no gas in Texas, but at various points in Missouri, Iowa, Michigan and Wisconsin it sold and delivered gas to distribution companies which served markets in that area. In other words, it transported property in interstate commerce as Stone Corporation did here; it took and loaded the property in Texas, as Stone (loaded or) conversely unloaded it here in Pennsylvania; and it bought the gas in Texas in contrast to the fact that no merchandise

was bought or sold in Pennsylvania. It was consequently a stronger case for State taxation than the instant case.

All of the contentions made by the Commonwealth in this case were there made by the State of Texas and rejected by the Supreme Court, which held the Act to be unconstitutional as unduly burdening interstate commerce. That case is on its facts so closely analogous to the instant case, the decision is so controlling, and the Court's opinion so applicable, that we shall quote at length therefrom:

". . . Numerous cases have upheld state levies where it is thought that the tax does not operate to discriminate against commerce or unduly burden it either directly or by the possibility of multiple taxation resulting from other taxes of the same sort being imposed by other states. The recurring problem is to resolve a conflict between the Constitution's mandate that trade between the states be permitted to flow freely without unnecessary obstruction from any source, and the state's rightful desire to require that interstate business bear its proper share of the costs of local government in return for benefits received. . . . It is now well settled that a *tax imposed on a local activity related to interstate commerce is valid if, and only if, the local activity is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it.* Memphis Natural Gas Co. v. Stone, 335 U. S. 80, 87 (1948) ; Western Live Stock v. Bureau of Revenue, supra, at 258.

". . . The 'taking' into appellants' pipe lines is solely for interstate transmission and the gas at that time is not only actually committed to but is moving in interstate commerce. What Texas seeks to tax is, therefore, more than merely the loading of an interstate

carrier which was *condemned* in Joseph v. Carter & Weekes Stevedoring Co., 330 U. S. 422, 427 (1947), for the gas here simultaneously enters the pipe line carrier and moves on continuously to its outside market. . . . As early as Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 213 (1885), this Court said, *'Receiving and landing* passengers and *freight is incident to their transportation.'* But receipt of the gas in the pipeline is more than its 'taking'; from a practical standpoint it is its 'taking off' in appellants' carrier into commerce; in reality the tax is, therefore, on the exit of the gas from the State. *This economic process is inherently unsusceptible of division into a distinct local activity* capable of forming the basis for the tax here imposed, on the one hand, and a separate movement in commerce, on the other. It is difficult to conceive of a factual situation where the incidence of taking or loading for transmission is more closely related to the transmission itself. This Court has held that much less integrated activity is 'so closely related to interstate transportation as to be practically a part of it.'[5] We are therefore of the opinion that the taking of the gas here is essentially a part of interstate commerce itself.

". . . Such an aspect of interstate transportation cannot be 'carve[d] out from what is an entire or integral economic process,' Nippert v. Richmond, *supra,*

---

[5] "Baltimore & Ohio S. W. R. Co. v. Burtch, 263 U. S. 540, 544 (1924) ('loading or unloading of a shipment'); also see Telegraph Co. v. Texas, 105 U. S. 460, 466 (1881) (tax on 'sending' of messages outside state is a regulation of interstate commerce); Puget Sound Stevedoring Co. v. State Tax Commission, 302 U. S. 90, 92 (1937) ('loading and discharge of cargoes' is interstate operation); Richfield Oil Corp. v. State Board, 329 U. S. 69, 83 (1946) (commerce begins 'no later than the delivery of the oil into the vessel')."

at 423, by legislative whimsy and segregated as a basis for the tax. The separation must be realistic.[7]

"Here it is perhaps sufficient that the privilege taxed, namely the taking of the gas, is not so separate and distinct from interstate transportation as to support the tax. But *additional objection* is present if the tax be upheld. *It would 'permit a multiple burden upon that commerce,'* Joseph v. Carter & Weekes Stevedoring Co., supra, at 429, for if Texas may impose this 'first taking' tax measured by the total volume of gas so taken, then Michigan and the other recipient states have at least equal right to tax the first taking or *'unloading'* from the pipeline of the same gas *when it arrives for distribution.* Oklahoma might then seek to tax the first taking of the gas as it crossed into that State. The net effect would be substantially to resurrect the customs barriers which the Commerce Clause was designed to eliminate. 'The very purpose of the Commerce Clause was to create an area of free trade among the several States. That clause vested the power of taxing a transaction forming an unbroken process of interstate commerce in the Congress, not in the States.' McLeod v. Dilworth Co., 322 U. S. 327, 330-331 (1944)."

*Joseph v. Carter & Weekes Stevedoring Co.,* 330 U. S. 422, referred to in the Court's opinion, is likewise

---

[7] "Appellees also rely on Memphis Natural Gas Co. v. Stone, supra; Western Live Stock v. Bureau of Revenue, supra; Edelman v. Boeing Air Transport, 289 U. S. 249 (1933); Chassaniol v. Greenwood, 291 U. S. 584 (1934); Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U. S. 604 (1938). We think these cases are distinguishable from the present one in that in each of them the tax was imposed on a less integral part of the commerce process involved. Also distinguishable is McGoldrick v. Berwind White Coal Mining Co., 309 U. S. 33 (1940), involving a tax on the sale of goods for consumption, imposed by the city in which the goods had come to rest. The Court there found that commerce, as to the goods, had ended prior to the taxable event, . . .".

controlling. In that case New York City levied an excise tax on the gross receipts of a company engaged in the business of stevedoring wholly within the territorial limits of the City. Its sole business was loading and unloading vessels moving in interstate and foreign commerce. The company was liable also for the general income and ad valorem taxes of the State and City of New York. The Supreme Court held that such a tax was invalid since it constituted a burden upon interstate and foreign commerce and could not be realistically separated therefrom. Mr. Justice REED, in delivering the opinion of the Court, said (page 427): *"We do not think that a tax on gross income from stevedoring, obviously a 'continuation of the transportation,' is a tax apportioned to income derived from activities within the taxing state. The transportation in commerce, at the least, begins with loading and ends with unloading.*

. . .

"A power in a state to tax interstate commerce or its gross proceeds, unhampered by the Commerce Clause, would permit a multiple burden upon that commerce. This has been noted as ground for their invalidation. Western Live Stock v. Bureau, 303 U. S. 250, 255. The selection of an intrastate incident as the taxable event actually carries a similar threat to the commerce but, where the taxable event is considered sufficiently disjoined from the commerce, it is thought to be a permissible state levy.[10] . . . The multiple burden on interstate transportation from taxation of the gross receipts from stevedoring arises from the possibility of a similar tax for unloading. . . .

---

[10] "Western Live Stock v. Bureau, supra, 258-260; Southern Pacific Co. v. Gallagher, 306 U. S. 167, 176; McGoldrick v. Berwind-White Co., 309 U. S. 33, 48; Dept. of Treasury v. Wood Corp., 313 U. S. 62."

". . . Although state laws do not discriminate against interstate commerce or in actuality or by possibility subject it to the cumulative burden of multiple levies, *those laws may be unconstitutional because they burden or interfere with commerce.* See Southern Pacific Co. Arizona, 325 U. S. 761, 767. *Stevedoring,* we conclude, *is essentially a part of the commerce itself and therefore a tax upon its gross receipts* or upon the privilege of conducting the business of stevedoring for interstate and foreign commerce, measured by those gross receipts, *is invalid.* We reaffirm the rule of Puget Sound Stevedoring Company. 'What makes the tax invalid is the fact that there is interference by a State with the freedom of interstate commerce.' Freeman v. Hewit, supra, p. 256."

If the Commonwealth can levy this tax on this appellant, which has no tangible or intangible property in Pennsylvania, no office in Pennsylvania, no wages or payroll in Pennsylvania, no employees doing any kind of work in Pennsylvania except driving its trucks in interstate commerce, and which makes no contracts and receives no orders in Pennsylvania, it is almost impossible to envision what is left of and what is meant and encompassed by the term "interstate commerce" which a State is prohibited from taxing. If, as the Commonwealth contends, this Act does not tax interstate commerce, can there be, in this particular field, any such thing as interstate commerce which is free from State taxation?

The foregoing cases completely answer every argument and utterly refute every contention made on this point by the Commonwealth. We find it unnecessary to discuss the other Constitutional objections raised by the plaintiff.

The decree is reversed with a procedendo. Costs to be paid by appellee.

Mr. Justice JONES, Mr. Justice CHIDSEY and Mr. Justice ARNOLD concur in the result.