The Atlantic Coast Ports Service Corporation *v.*
Commonwealth of Pennsylvania.

Argued December 8, 1970, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER, and BARBIERI (who has since been appointed to the Supreme Court and did not participate in the decision). Reargued March 4, 1971, before the full bench, including Judge THEODORE O. ROGERS, who was appointed to fill the vacancy left by the resignation of Judge BARBIERI.

*David H. Rosenbluth,* with him *Lane Taylor, Jr.,* and *Ronon, Stevens & Young,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, with him *Fred Speaker,* Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, March 9, 1971:

This case comes before the Court on appeal by Atlantic Coast Ports Service Corporation from the refusal of the Board of Finance and Revenue to review the corporation's petition for review of the Pennsylvania corporate net income tax assessment for the year ending December 31, 1964. All of the facts were stipulated by the parties. We adopt this stipulation and set forth those facts most pertinent to our opinion.

Atlantic is a corporation which provides tallymen on the dock to count items and check for damage as shipments are unloaded from vessels by stevedores. It is a Delaware corporation sharing offices in Philadelphia with Norton, Lilly & Company, a corporation engaged in arranging various services needed by vessels while they are in port.

The issue on which this case turns is whether the tallymen are engaged in interstate or foreign commerce, rather than in local commerce. If they are, Atlantic is immune from Pennsylvania corporate net income tax under the import-export clause of the federal Constitution. It is the decision of this Court that the tallymen are not engaged in interstate or foreign commerce and that Atlantic Coast Ports Service Corporation is subject to the state tax.

There are no cases deciding the issue of whether tallymen are engaged in interstate or foreign commerce. Therefore, this case is one of first impression. There are cases which determine that stevedores are engaged in interstate commerce when a stevedoring corporation maintains supervision and control over the men as they work. On the other hand, where the stevedoring corporation merely rents out its men to a shipping company, it is engaged in local rather than interstate or foreign commerce. In the latter instance a stevedoring corporation is subject to state taxation, while in the former instance it is not. *Puget Sound Stevedoring Company v. State Tax Commission,* 302 U.S. 90 (1937); *Joseph, Comptroller, et al. v. Carter & Weekes Stevedoring Co.,* 330 U.S. 422 (1947). In its brief, Atlantic attempts to draw an analogy between tallymen and stevedores. However, such an analogy is improperly made. Further, this case does not turn on the element of whether Atlantic was an independent contractor.

In *Western Maryland Railroad Company v. State Tax Commission,* 340 U.S. 520 (1950), Mr. Justice DOUGLAS, in holding the railroad subject to state tax, said, "The ultimate impact of such a holding is difficult to measure, since manifold services are involved in the movement of exports and imports within the country. Problems of this nature, like many problems in the law, involve the drawing of lines. So far as taxes on activities connected with bringing exports to or imports from the ship are concerned, we think the line must be drawn at the water's edge."

At all times the tallymen in this case sat on the dock, counting items and checking them for damage. They never boarded the ship, never unloaded cargoes and never extended their activities beyond the water's edge in any fashion. Applying Mr. Justice DOUGLAS' test, we draw the line at the water's edge. Doing so

puts Atlantic's services out of the stream of interstate and foreign commerce. Because the corporation was not engaged in interstate or foreign commerce, the import-export clause of the federal Constitution does not provide Atlantic with immunity from the Pennsylvania corporate net income tax. Accordingly, we find that its services are subject to the state tax for the year in question.

## CONCLUSIONS OF LAW

1. Atlantic Coast Ports Service Corporation, which shares offices with another corporation in Philadelphia, is subject to Pennsylvania corporate net income tax liability for the year ending December 31, 1964, under the Pennsylvania Corporate Net Income Tax Act, Act of May 16, 1935, P. L. 208, as amended by Act of August 24, 1951, P. L. 1417.

2. In its activities of providing tallymen on docks to count items and check for damage as items were unloaded from vessels, Atlantic was not engaged in interstate or foreign commerce during the year in question and is therefore not immune from tax liability under the import-export clause or the commerce clause of the federal Constitution for that year.

3. Judgment should be entered in favor of the Commonwealth and against Atlantic in the amount of $275.99 plus interest and costs, the amount due for the year ending December 31, 1964 under the Pennsylvania Corporate Net Income Tax Act.

Accordingly, we enter the following

## ORDER

AND Now, this 9th day of March, 1971, the appeal is hereby dismissed and judgment is directed to be entered in favor of the Commonwealth and against Atlantic Coast Ports Service Corporation in the amount

of $275.99 together with interest and costs according to law unless exceptions be filed hereto within thirty (30) days.

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

Any tax, however measured, imposed by a state upon the business of loading cargo onto or unloading cargo from ships engaged solely in interstate or foreign commerce is in direct conflict with Article I, Section 8, of the United States Constitution[1] and, therefore, unconstitutional as a tax on the privilege of engaging in interstate or foreign commerce. *Puget Sound Stevedoring Co. v. Tax Commission of the State of Washington,* 302 U.S. 90, 82 L. ed. 68, 58 S. Ct. 72 (1937).

I cannot accept as controlling the majority's "water's edge" test which was the sole basis for its determination that appellant was "out of the stream of interstate and foreign commerce." The majority reached its conclusion by the following reasoning: "At all times the tallymen in this case sat on the dock, counting items and checking them for damage. They never boarded the ship, never unloaded cargoes and never extended their activities beyond the water's edge in any fashion. Applying Mr. Justice DOUGLAS' test, we draw the line at the water's edge. Doing so puts Atlantic's services out of the stream of interstate and foreign commerce."

In *Puget Sound Stevedoring Co., supra,* it was recognized that transportation of cargo by water is impossible unless the thing to be transported is put aboard the ship and taken off at its destination. The Court said: "True, the service did not begin or end at the

---

[1] "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States . . ." U. S. Const. art. I, §8.

ship's side, where the cargo is placed upon a sling attached to the ship's tackle. It took in the work of carriage to and from the 'first place of rest', which means that it covered the space between the hold of the vessel and a convenient point of discharge upon the dock." Here we have appellant's tally clerks checking for damage and counting cargo *as it is moved* by stevedores. This is not a subsequent checking but is simultaneous with and part of the unloading operation. This service is an integral part of the business of unloading cargo and, if done by the ship's crew or by stevedores, would be, without question, a part of the unloading process and essential to waterborne commerce.

It is likewise significant that appellant controlled, directed, and supervised the work of its tally clerks. The mere fact that appellant's employees never boarded the ship or crossed the water's edge is not the controlling factor. The dominant factor is whether the counting and inspection at the "first place of rest" was an integral part of unloading the ship's cargo. The majority opinion quotes with approval Justice DOUGLAS, from *Western Maryland Ry. Co. v. Rogan,* 340 U.S. 520, 95 L. ed. 501, 71 S. Ct. 450 (1951), when he said: ". . . the line must be drawn at the water's edge." However, the majority fails to set forth Justice DOUGLAS' next sentence which reads: "Whether loading and unloading would be exempt is a question we reserve."

Thus it is clear that in *Western Maryland Ry. Co. v. Rogan, supra,* it was decided that the transportation of goods by railroads from the port to their final destination and from the place of origin of shipment to the port was not foreign commerce. The test then, as applied to the facts of the instant case, is not one of the "water's edge" but rather whether appellant's tally clerks are engaged in the business of unloading the ship's cargo, such unloading from ship to dock being

the terminal phase of the cargo's being in foreign commerce. I conclude that they were so engaged in the business of unloading cargo and that appellant is not subject to the Pennsylvania tax in question.

I would distinguish the instant case from the holdings in *Commonwealth v. Northern Metal Co.,* 416 Pa. 75, 204 A. 2d 467 (1964), cert. denied, 380 U.S. 944, and *Commonwealth v. Camax Company,* 83 Dauph. 56 (1964), since here (1) we have a foreign corporation, not a domestic corporation, and (2) appellant is not engaged in intrastate commerce.

The fact that a business is exclusively engaged in interstate or foreign commerce does not necessarily insulate it from an apportioned state net income tax. *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 3 L. ed. 2d 421, 79 S. Ct. 357 (1959). If the tax is not on the privilege of engaging in interstate or foreign commerce and does not discriminate against, interfere with, or unduly burden such commerce, then the business is not insulated from the tax. *Roy Stone Transfer Corp. v. Messner,* 377 Pa. 234, 103 A. 2d 700 (1954). Here the business that appellant does in Pennsylvania is exclusively in foreign commerce, and Pennsylvania's attempt to impose a tax on the privilege of doing such business constitutes a privilege tax on foreign commerce. *Commonwealth v. Eastman Kodak Co.,* 385 Pa. 607, 124 A. 2d 100, cert. den., 352 U.S. 952 (1956); *Roy Stone Transfer Corp. v. Messner, supra.* Such a tax is an interference by Pennsylvania with freedom of foreign commerce and accordingly is forbidden by the Commerce Clause of the United States Constitution. *Joseph v. Carter and Weekes Stevedoring Company,* 330 U.S. 422, 91 L. ed. 993, 67 S. Ct. 815 (1947). *See Phila. Tax Review Board v. Norton, Lilly and Co.,* 398 Pa. 77, 157 A. 2d 60 (1959).

Judges KRAMER and MANDERINO join in this dissent.