C. I. Whitten Transfer Company, a Delaware Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Department of Revenue, Respondent.

38

Argued December 6, 1977, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers, Blatt and DiSalle.

Robert D. Kalinoski, with him William A. Gray, and Wick, Vuono & Lavelle, for appellant.

Vincent J. Dopko, Deputy Attorney General, for appellee.

OPINION BY JUDGE ROGERS, February 24, 1978:

C. I. Whitten Transfer Company (Whitten) has filed a petition for review of a decision of the Board of Finance and Revenue (Board) sustaining the Department of Revenue's refusal to resettle Whitten's corporate net income tax and a second petition for review of the Board's decision sustaining the Department's refusal to resettle Whitten's franchise tax. The petitions were consolidated for hearing and judgment herein.

The facts have been stipulated. Whitten is a Delaware corporation engaged in the hauling of freight. Whitten filed reports for the Pennsylvania corporate net income tax and franchise tax for the period May 1, 1973 to December 31, 1973 together with a statement that it was not subject to either tax because it was not doing business in Pennsylvania. The strength or weakness of Whitten's position rests on the following stipulated facts:

    (a) C. I. Whitten Transfer Company (hereinafter Taxpayer) was incorporated on or about January 22, 1973, and is a wholly-owned subsidiary of Qualpeco Services, Inc., which latter corporation is a Delaware corporation incorporated in September 1972.

    (b) Prior to 1973, Taxpayer's predecessor company, a West Virginia corporation by the same name, was engaged in the transportation of commodities in interstate commerce and was

properly certificated by the Interstate Commerce Commission.

(c) On or about May 29, 1973, Taxpayer qualified to do business in Pennsylvania as a result of having secured intrastate operating rights from the Pennsylvania Public Utility Commission.

(d) During the tax period in question, May 1 to December 31, 1973, Taxpayer handled interstate freight from points in Pennsylvania to points outside Pennsylvania, interstate freight from points outside Pennsylvania to points within Pennsylvania, interstate freight from points outside of Pennsylvania to other points outside of Pennsylvania while traversing Pennsylvania and also made intrastate pickups and delivery between points in Pennsylvania. Since all of Taxpayer's equipment and vehicles are located outside Pennsylvania, such intrastate activity necessarily involved the interstate movement of Taxpayer's vehicles.

(e) Taxpayer owns no real property which is located in or has a situs in the Commonwealth of Pennsylvania. The only tangible personal property that is ever present in Pennsylvania is that which is there in connection with the conduct of Taxpayer's interstate transportation business or which has come into Pennsylvania for a specific intrastate movement of goods.

(f) Taxpayer does not maintain any corporate offices or meeting places in the Commonwealth of Pennsylvania.

(g) Taxpayer does not and has not had any employees in Pennsylvania except for the drivers of its trucks which are present in Penn-

sylvania in connection with the conduct of Taxpayer's interstate or intrastate transportation business.

(h) Taxpayer does not and has not had any agents or representatives in Pennsylvania.

(i) Taxpayer does not maintain any terminal facilities in the Commonwealth of Pennsylvania.

(j) Taxpayer does not own any motor vehicle equipment registered with the Commonwealth of Pennsylvania. In connection with said intrastate transportation business, Taxpayer does not have any of its property stored, garaged, serviced or repaired within the Commonwealth except on an emergency basis. Taxpayer purchases fuel for its vehicles within the Commonwealth and uses the highways of the Commonwealth of Pennsylvania.

(k) Taxpayer is qualified to do business in Pennsylvania and during 1973 its total intrastate revenue miles in Pennsylvania were 17,009 miles; its total interstate revenue miles in Pennsylvania were 330,991 miles; its total intrastate and interstate revenue miles in Pennsylvania were 348,000 miles and its total revenue miles for its entire system were 4,504,056 miles.

(l) Taxpayer is subject to the payment of, has paid, and does pay the tax for the purchase and use of gasoline and other fuels purchased for or used by Taxpayer's vehicles as imposed by the Act of May 21, 1931, P.L. 149, as amended, 72 P.S. §2611.A, and the Act of July 2, 1947, P.L. 1199, as amended, 72 P.S. §2613.1.

The Department of Revenue disagreed with Whitten's contention that it was not doing business in Pennsylvania and settled its corporate net income tax

at $4,446.97 and its franchise tax at $894.02 for the period May 1 to December 31, 1973.

Article IV, Section 402 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7402, imposes the corporate net income tax upon the taxable income of all corporations, foreign or domestic, *"doing business in this Commonwealth,* or having capital or property employed or used in this Commonwealth. . . ."" (Emphasis added). The corporate net income tax is a property tax despite a reference in Section 402 of the Tax Reform Code to the tax as an excise tax for the privilege of doing business in the Commonwealth. *Commonwealth v. Eastern Motor Express, Inc.,* 398 Pa. 279, 157 A.2d 79 (1959); *Commonwealth v. Eastman Kodak Co.,* 385 Pa. 607, 124 A.2d 100 (1956); *Roy Stone Transfer Corp. v. Messner,* 377 Pa. 234, 103 A.2d 700 (1954).

Article VI, Section 602(b) of the Tax Reform Code, 72 P.S. §7602, imposes a ten mill franchise tax on the taxable value of all capital stock of foreign corporations where, as stated in Section 601, 72 P.S. §7601, they are *"doing business in* and liable to taxation within *this Commonwealth* or having capital or property employed or used in this Commonwealth. . . ."" (Emphasis added.) The franchise tax is in the nature of a tax on the *privilege* of doing business in this Commonwealth. *Commonwealth v. Universal Carloading and Distributing Co.,* 29 Pa. Commonwealth Ct. 553, 372 A.2d 41 (1977).

Whitten first says that it is not doing business in the Commonwealth within the meaning of the Tax Reform Code and thus not subject to either tax. We disagree. Whitten has a certificate of authority from the Commonwealth pursuant to Section 2001 A of the Business Corporation Law,[1] 15 P.S. §2001 A, to do

---

[1] Act of May 5, 1933, P.L. 364, *as amended.*

business in Pennsylvania. Whitten also possesses the certificate of public convenience of the Pennsylvania Public Utility Commission authorizing it to engage in intrastate freight operations. We are mindful of the fact that the mere possession of a license to do business in Pennsylvania does not establish that the possessor is doing business in the State for purposes of taxation. *Callery's Appeal*, 272 Pa. 255, 116 A. 222 (1922); *Commonwealth v. Mississippi Central Railroad Co.*, 11 Pa. D. & C. 2d 623 (1956). Whitten, however, not only holds the State's authorization to do business here, it has put the authorization to commercial use in hauling commodities between points within the State. As indicated by the stipulation of facts, Whitten's intrastate revenue miles totaled 17,009 during the May 1 to December 31, 1973 taxable period. The activity constituted "doing business" in Pennsylvania.

The Commonwealth, as required by statute, calculated Whitten's corporate net income tax by the apportionment formula of Article IV, Section 401(3)-2.(b)(1) of the Tax Reform Code, 72 P.S. §7401(3)2.-(b)(1), which provides, in pertinent part, that:

> (b) Railroad, Truck, Bus or Airline Companies. (1) All business income of railroad, truck, bus or airline companies shall be apportioned to this Commonwealth by multiplying the income by *a fraction, the numerator of which is the taxpayer's total revenue miles within this Commonwealth during the tax period and the denominator of which is the total revenue miles of the taxpayer everywhere during the tax period....* (Emphasis added.)

It used the same apportionment formula to compute Whitten's franchise tax pursuant to Section 602(b) which provides, in pertinent part, that:

(b) Every foreign corporation . . . from which a report is required under section 601 hereof, shall be subject to and pay into the treasury of the Commonwealth annually, through the Department of Revenue, a franchise tax at the rate of ten mills for the calendar year 1971 and the fiscal year beginning in 1971 and each year thereafter, upon a taxable value to be determined in the following manner. The actual value of its whole capital stock of all kinds, including common, special, and preferred, shall be ascertained in the manner prescribed in section 601 of this article. *The taxable value shall then be determined by employing the relevant apportionment factors set forth in Article IV.* ... (Emphasis added.)

The numbers used by the Commonwealth in the apportionment fraction to arrive at Whitten's taxes were as follows:

$$\frac{17{,}009 \text{ (Pa. intrastate miles)} + 330{,}991 \text{ (Pa. interstate miles)}}{4{,}504{,}056 \text{ (total miles everywhere)}}$$

Whitten says that the inclusion in the numerator of the fraction of the 330,991 interstate revenue miles driven in Pennsylvania results in the taxation of the privilege of engaging in interstate commerce in violation of the Commerce Clause of the United States Constitution.[2] We again disagree. A state tax, whether labeled a property tax or an excise tax on the privilege of doing business in the State, does not violate the Commerce Clause if it "is applied to an activity [in interstate commerce] with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State."

---

[2] U.S. Const. Article I, §8, cl. 3.

*Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279 (1977) ;[3] *Commonwealth v. Universal Carloading and Distributing Co., supra.* Whitten points to the facts of the cases of *Commonwealth v. Eastman Kodak Co., supra,* and *Roy Stone Transfer Corp. v. Messner, supra,* as supporting its contention that its intrastate hauling operations are so insignificant that the "substantial nexus" with Pennsylvania necessary to tax its interstate miles driven in Pennsylvania has not been established. In *Eastman Kodak Co., supra,* and *Roy Stone Transfer Corp., supra,* the Supreme Court of Pennsylvania held that the efforts of the Commonwealth to tax the interstate activities of foreign corporations violated the Commerce Clause because the corporation's local activities were insufficient to justify taxation of the interstate operations. The facts of these cases are much different from those here. In *Eastman Kodak Co.* and *Roy Stone Transfer Corp.* the foreign corporations which the Commonwealth sought to tax were not authorized to do business in Pennsylvania and in fact conducted no intrastate business within the Commonwealth. Whitten is not exclusively engaged in Pennsylvania in the transportation of commodities in interstate commerce; it is

[3] Prior to *Complete Auto Transit, Inc. v. Brady, supra,* a State tax was held, on its face, to be violative of the Commerce Clause where the taxed corporation was engaged exclusively in interstate commerce and the tax was upon the "privilege" of engaging in an interstate commerce activity within the taxing state. *See Spector Motor Service v. O'Connor,* 340 U.S. 602 (1951). In *Complete Auto Transit, Inc., supra,* the Supreme Court of the United States overruled this doctrine and held that regardless of the label of the state tax—i.e. whether it was called a privilege or property tax—, the tax would violate the Commerce Clause only if there was no substantial nexus; or the tax was not fairly apportioned; or the tax discriminated against interstate commerce or it was not fairly related to the services provided by the State.

authorized to engage in the hauling business within Pennsylvania and, in fact, does so to a substantial degree.

Whitten finally makes arguments to the general effect that the taxes it is asked to pay in these cases are not fairly related to the services provided by the Commonwealth. We firmly disagree. In addition to the use of the State's highways and other services incident to its travel in the State, Whitten enjoys the particular advantage of a certificate of public convenience of the Pennsylvania Public Utility Commission protecting it in its intrastate business. Furthermore, as we have already noted, the apportionment fraction used in determining the amount of Whitten's taxes employs only Pennsylvania revenue miles in the numerator; hence only Whitten's intrastate activities conducted in Pennsylvania are subjected to tax. *See Central Greyhound Lines v. Mealey,* 334 U.S. 653 (1947); *Pullman Palace Car Co. v. Pennsylvania,* 141 U.S. 18 (1891). The apportionment fraction used in computing Whitten's taxes assures that Whitten's interstate activities bear no more than " 'a fair share of the cost of the local government whose protection it enjoys.' " *Central Greyhound Lines, supra,* 334 U.S. at 663.

Accordingly, we enter the following

ORDER

AND Now, this 24th day of February, 1978, it is ordered that C. I. Whitten Transfer Company's petition for review of its franchise tax filed to docket No. 497 C.D. 1977 and its petition for review of its corporate net income tax filed to docket No. 115 C.D. 1977, be and they are hereby dismissed. Unless exceptions hereto are filed within thirty (30) days of the filing of this Order, as provided by law, judgment is hereby

directed to be entered in favor of the Commonwealth and against C. I. Whitten Transfer Company at 497 C.D. 1977 in the amount of $894.02, plus interest at the rate of Six Percent (6%) per annum from April 15, 1974 to the date of payment, and at 115 C.D. 1977 in the amount of $4,446.97 plus interest at the rate of Six Percent (6%) per annum from April 15, 1974 to the date of payment.