534 A.2d 169

H. K. Porter Company, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

464

Argued September 16, 1987, before President Judge CRUMLISH, JR. and Judges CRAIG, MACPHAIL, BARRY and PALLADINO.

*John H. Enos, III*, with him, *Wayne M. Pecht, Keefer, Wood, Allen & Rahal*, for petitioner.

*Eugene J. Anastasio*, Deputy Attorney General, with him, *Bart J. DeLuca, Jr.*, Deputy Attorney General, *LeRoy S. Zimmerman*, Attorney General, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., December 4, 1987:

H. K. Porter Company, Inc. (Porter), petitions this Court for review of a Commonwealth Board of Finance

and Revenue order denying its request for a refund of the 1982 Pennsylvania Use Tax[1] it paid on the purchase of a corporate aircraft. We affirm.

Porter, a Delaware corporation with principal offices in Pittsburgh, manufactures and retails industrial products throughout the United States and other countries. According to the stipulated facts, Porter purchased and took delivery of an aircraft in Delaware in order to transport its customers, executives and employees on business-related travel. The aircraft was thereafter transferred to the Greater Pittsburgh International Airport, where it was hangared. The plane is piloted largely on interstate flights, some of which have originated, terminated, or made stopovers in Pennsylvania. Routine maintenance is performed on the aircraft while hangared at the Pittsburgh airport.

Porter contends that because the aircraft was bought outside the Commonwealth and is used almost exclusively in interstate travel,[2] the imposition of the tax on its purchase violates the Commerce Clause of the United States Constitution. U.S. CONST. art. I, §8.

There is no question that state taxes which unfairly burden interstate commerce and the instruments thereof are invalid. *Dean Milk Co. v. City of Madison,* 340 U.S. 349 (1951). However, the Commonwealth counters that because the tax does not discriminate against interstate commerce in this instance and because the item

---

[1] Section 202(b) of the Act of March 4, 1971 (known as the Tax Reform Code of 1971), P.L. 6, *as amended,* 72 P.S. §7202(b). Porter sought a refund of $339,900.00 tax and $46,306.71 interest.

[2] Three flights in the taxable year originated and terminated in Pennsylvania, Stipulation of Fact No. 17, or .5% of the aircraft's total *flight* time, Stipulation of Fact No. 18. Fifty-six flights originated in Pennsylvania without any stopovers in the state. An additional fifty-six flights terminated in Pennsylvania without stopovers. Stipulation of Fact No. 17.

or activity taxed possesses a substantial nexus to the taxing state, the use tax is constitutional. We agree.

In urging this Court to declare the tax unconstitutional, Porter argues that there was no "taxable moment" when the state could have levied a tax on the aircraft, *Southern Pacific Co. v. Gallagher,* 306 U.S. 167 (1939), because there was no separate and distinquishable activity to subject it to the tax. Porter maintains that the aircraft became an instrument of commerce before entering Pennsylvania and is hangared here as a mere incident of its interstate commercial functions. That is, the plane is not withdrawn from the stream of interstate commerce by virtue of intermittent storage between flights.

The Commonwealth argues that the proper test for determining the validity of a state tax in the context of its impact on interstate commerce is that articulated by the United States Supreme Court in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274 (1977). It contends that *Southern Pacific,* although never explicitly overruled, has been rejected in favor of the four-part test of *Complete Auto Transit*. We agree that *Complete Auto Transit* is the appropriate authority under which to review a state tax challenged as burdensome to interstate commerce.

In *Mobil Oil Corp. v. Commissioner of Taxes of Vermont,* 445 U.S. 425 (1980), the Supreme Court noted the need to clarify the conflicting precedents spawned by litigation over the effect of the Commerce Clause on state taxation of interstate commerce and sought to establish "a consistent and rational method of inquiry." *Id.* at 443. To this end, it chose to examine the practical effect of the challenged tax using the *Complete Auto Transit* standard. Our own Commonwealth's Supreme

Court has also applied *Complete Auto Transit* when reviewing the validity of similar state taxes.[3]

Under this test, a challenged tax must be applied to an activity with a substantial nexus with the taxing state, must be fairly apportioned, may not be discriminatory, and must be fairly related to the services provided by the state. *Id.* at 279.

Applying the first element, we note that Porter's aircraft is housed at the Pittsburgh airport and undergoes maintenance at that facility. Flights originate and/or terminate there and have thus enjoyed the use of the airport. Apart from wholly intrastate flights, which admittedly have been minimal, the aircraft is hangared nearby the city where Porter maintains its principal offices. Thus, we have no trouble concluding that the use of the aircraft has a substantial nexus to the Commonwealth.

Next, the tax must be fairly apportioned. In other words, the tax must not be duplicative or subject an already taxed activity or incident to double taxation. *Mobil; Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434 (1979). The fact that Porter paid no tax in Delaware upon purchase does not per se legitimate the Commonwealth's use tax. *Mobil* at 444. However, Section 206 of the Tax Reform Code of 1971, 72 P.S. §7206, provides a credit for similar taxes paid to another jurisdiction on purchases for use outside Pennsylvania. This credit against the Pennsylvania tax equal to that paid to

---

[3] *See, e.g., American Trucking Associations, Inc. v. Scheiner,* 510 Pa. 430, 509 A.2d 838 (1986), *rev'd on other grounds,* U.S. , 55 U.S.L.W. 4988 (1987); *Airway Arms, Inc. v. Moon Area School District,* 498 Pa. 286, 446 A.2d 234 (1982). This Court has followed *Complete Auto Transit* as well. *See, e.g., C.I. Whitten Transfer Co. v. Department of Revenue,* 34 Pa. Commonwealth Ct. 37, 382 A.2d 1251 (1978).

another state ensures that there will be no double or cumulative taxation.

The third prohibition—that the tax not discriminate against interstate commerce—forbids a state from imposing a heavier tax burden on out-of-state businesses engaging in interstate commerce than that imposed on its own residents. *American Trucking Associations, Inc. v. Scheiner,* U.S. , 55 U.S.L.W. 4988 (1987). We see no discrimination in this instance, where a Pennsylvania business would be subject to the same use tax if it were to purchase an aircraft in another state and operate it principally from this state. Moreover, an entirely intrastate transaction, where a resident business purchased and took delivery of a plane *within* the Commonwealth, would, of course, be subject to an equal amount of sales tax. Here, the Commonwealth is not taxing "a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the [s]tate." *Armco Inc. v. Hardesty,* 467 U.S. 638, 642 (1984).

The final requirement is that the tax be fairly related to the services provided by the state. We believe this to be akin to the first, "substantial nexus" limitation, in that it requires more than mere entry into the state before a tax may be validly imposed. Porter's aircraft is housed and maintained at the Pittsburgh airport, where it provides a convenient point of embarkation for the travel necessitated by the conduct of Porter's business. To the extent that a Commonwealth transportation hub facilitates the use of Porter's aircraft (which in turn facilitates its business activities both in and out of state), there is a fair relation to the services provided. *See Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.,* 405 U.S. 707 (1972).

Porter next contends that the use of its aircraft is excluded from tax pursuant to the 1971 Tax Code. Sec-

tion 201(o)(4)(A) of the Code, 72 P.S. §7201(o)(4)(A), excludes from taxation

> [a]ny tangible personal property . . . on which the taxing of the storage, use or other consumption thereof is expressly prohibited by the Constitution of the United States or which is excluded from tax under other provisions of this article.

Since we have concluded that the tax on the aircraft's use is not prohibited by the Constitution, we must determine if any other statutory provision excludes taxation in this instance.[4]

The Code enumerates exclusions from the tax on the direct use of tangible personal property in manufacturing: farming, dairying and horticulture; public utility service; and certain processing operations. Although the aircraft could arguably be said to be used in manufacturing (Porter's principal business), the Code clearly states that the exclusion shall not apply "to . . . property or services to be used or consumed in managerial sales or other nonoperational activities. . . ." Section 201(o)(4)(B)(iv), 72 P.S. §7201(o)(4)(B)(iv). The facts as stipulated indicate that the aircraft is used to transport customers, executives and employees of taxpayer. This use constitutes a nonoperational activity. As such, any exclusion from the tax which the airplane's use might otherwise enjoy as a manufacturing use is not applicable.

Accordingly, we will affirm the order of the Board of Finance and Revenue.

---

[4] Porter relies on Section 201(o)(5) of the Code to urge that the airplane's use must be excluded. We find this section, which establishes a rebuttable presumption that property subject to the use tax will be utilized for purposes constituting a "sale at retail" unless the user proves that its predominant purpose is for something else, inapposite.

The order of the Board of Finance and Revenue dated July 31, 1984, at Docket No. RST-7490, is affirmed, subject to exceptions pursuant to Pa. R.A.P. 1571(i).